UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ROLAND GUTIERREZ, et al,

                              Plaintiffs,

               v.

THE CITY OF NEW YORK, et al

                              Defendants.
_____

08 Civ. 6537 (LBS) (JCF)

**OPINION &
ORDER**

SAND, J.

        Plaintiffs, detectives with the New York City Police Department ("NYPD"), bring this suit against the City of New York, the NYPD, and individual supervisors within the NYPD. Defendants move for summary judgment dismissing Plaintiffs' claims of employment discrimination based upon race and national origin, retaliation, and hostile work environment. For the following reasons, the motions are granted in part and denied in part.

### I.  Background

        Plaintiffs Roland Gutierrez, Frankie Rosado, Rene Canela, and David Flores are Hispanic-American detectives who work in the 52nd Precinct Detective Squad of the NYPD ("Precinct" or "52nd Precinct").   Defendants include the City of New York, the NYPD, and four individual Defendants, Commissioner of the NYPD Raymond Kelly, Deputy Chief Stephen Kennedy, Lieutenant Kevin Moroney, and Deputy Inspector Raymond Rooney.  Kennedy, Moroney, and Rooney are supervisors within the 52nd Precinct.

        Plaintiffs identify various actions by Defendants that they allege were discriminatory or taken in retaliation for their complaints to the NYPD Office of Equal Employment Opportunity ("OEEO") and the U.S. Equal Employment Opportunity Commission ("EEOC").  Specifically,

1

they allege Defendants denied them investigative overtime, imposed excessive disciplinary actions, failed to promote them, gave them unfavorable work assignments, reassigned their arrests, denied them time off, denied their transfer requests, and denied them the opportunity to "sleep over" at the station and earn overtime.  They allege white officers were more favorably treated and granted many of these benefits.  In addition, Plaintiffs allege Defendant Moroney deflated their evaluations, hung a racially charged sign in his office, transferred out minority officers and transferred in white officers, placed shamrocks on Plaintiffs' computers, made harassing statements, and required a more strict dress code of Plaintiffs than of white detectives.

There is some dispute as to when the Plaintiffs first complained of discriminatory conduct.  Viewing the facts in the light most favorable to the Plaintiffs for the purposes of this motion, Plaintiff Gutierrez's first protected action took place on February 28, 2007 when Defendant Kennedy contacted the OEEO on behalf of Gutierrez regarding discrimination by Moroney.[1]  See Cronin Decl. Ex. I.  Rosado filed an initial complaint with the OEEO on August 1, 2007, and Canela and Flores filed initial complaints on August 8, 2007.  Barnett Decl. Ex. H. Plaintiffs also filed complaints with the EEOC.  *See* Cronin Decl. Ex. G (showing Rosado, Canela, and Gutierrez sent complaints to EEOC August 8, 2007, and Flores sent his December 27, 2007); Barnett Decl. Exs. QQQ, TTT, and XXX.

## II.  Standard of Review

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[1] It does not appear this claim proceeded to further stages.  Another OEEO complaint was filed on behalf of Gutierrez on August 8, 2007.  *See* Barnett Decl. Ex. VV.

of law." Fed. R. Civ. P. 56(c).   "[T]he burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).  An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223–24 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249–50.  All ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought.  *Id.* at 249.

The Court of Appeals for the Second Circuit has noted that "an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions."  *Holtz v. Rockefeller & Co., Inc*., 258 F.3d 62, 69 (2d Cir. 2001); *Gallo*, 22 F.3d at 1224.  Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact."  *McLee v. Chrysler Corp.,* 109 F.3d 130, 135 (2d Cir. 1997).

### III. Discussion

#### a.   NYPD Is Not a Suable Entity

Chapter 17, § 396 of the New York City Charter provides that "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not that of any agency except where otherwise provided by law."  N.Y. City Charter, Ch. 17 § 396.  As an agency of the City, the NYPD is a non-suable

3

entity, and all claims against it must be dismissed. *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (finding "district court correctly noted that the NYPD is a non-suable agency of the City"); *Emerson v. City of New York*, No. 09 Civ. 1656 (VM), 2010 WL 2910661, at *8 (S.D.N.Y. 2009) (holding NYPD Firearms Division and NYPD 46th Precinct are agencies and thus not suable entities). Thus, the City of New York is the proper defendant and the claims against the NYPD are dismissed.

### b. Failure to Exhaust Administrative Remedies

Defendants assert that Plaintiffs' Title VII failure to promote claims should be dismissed because they were not alleged in Plaintiffs' EEOC charges. The exhaustion of administrative remedies through timely filing with the EEOC is "a precondition to bringing a Title VII action." *Francis v. City of New York*, 235 F.3d 763, 769 (2d Cir. 2000). It "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc*., 455 U.S. 385, 393 (1982). The purpose of this requirement, "which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." *Miller v. Int'l Tel. & Tel*., 755 F.2d 20, 26 (2d Cir.), *cert. denied,* 474 U.S. 851 (1985) (describing EEOC charge requirement in the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*); *Stewart v. U.S. Immigration & Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir. 1985) ("[T]he purpose of the [Title VII] exhaustion requirement . . . is to give the administrative agency the opportunity to investigate, mediate, and take remedial action . . . .").

However, claims not raised in an EEOC complaint may be brought in federal court if they are "reasonably related" to the claim filed with the agency. *Williams v. N.Y. City Hous. Auth.*,

458 F.3d 67, 70 (2d Cir. 2006) (per curium) (citing *Butts v. City of N.Y. Dep't of Hous.*

*Preservation & Dev.*, 990 F.2d 1397, 1401–1402 (2d Cir. 1993)).  A claim may be considered

reasonably related where "the conduct complained of would fall within the scope of the EEOC

investigation which can reasonably be expected to grow out of the charge that was made."

*Williams v. N.Y. City Hous. Auth.*, 458 F.3d at 70 (citing three bases for a claim to be

"reasonably related").  "The central question is whether the complaint filed with the EEOC gave

that agency adequate notice to investigate discrimination on both bases."  *Id.* at 70 (internal

quotation marks and citation omitted); *Holtz*, 258 F.3d at 83 (applying "reasonably related" test

where both incidents occurred prior to EEOC filing).

Here, Plaintiffs' EEOC claims addressed performance evaluations, denial of overtime,

job assignments, transfers, and alleged harassing and discriminatory statements by supervisors.

The failure to promote claims are based on the same allegations of race and national origin

discrimination that underlie the EEOC claims.  *See Holtz*, 258 F.3d at 83–84 (stating district

court properly found failure to promote and transfer allegations related to failure to train because

it was "reasonable to suspect that the EEOC, in investigating [plaintiff's] complaint of failure to

train because of age, would have assessed [defendant's] promotion and transfer policies.").

These charges are not a "wholly different type of discrimination."  *Peterson v. Ins. Co. of N.A.*,

884 F. Supp. 107, 109–10 (S.D.N.Y. 1995) (collecting cases).  The motion to dismiss the Title

VII failure to promote claims based on failure to raise them in the EEOC complaint is denied.

### c.  Timeliness of Title VII Claims

In New York, Title VII claims must be filed with the EEOC within 300 days of the

alleged discriminatory act.  See 42 U.S.C. § 2000e-5(e)(1); *see also Butts*, 990 F.2d at 1400.

"When a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred."  *Butts*,

990 F.2d at 1401.  Defendants assert that many of the Plaintiffs' claims occurred before the 300

day window and, as such, those claims must be dismissed.  Plaintiffs respond that the claims of

disparate treatment, hostile work environment, and retaliation together constitute a continuing

violation.  "Under the continuing violation exception to the Title VII limitations period, if a Title

VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in

furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that

policy will be timely even if they would be untimely standing alone."  *Lambert v. Genesee*

*Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993).[2]  However, Title VII "precludes recovery for discrete acts

of discrimination that occur outside the statutory time period," even when they are related to acts

alleged in timely filed charges.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105

(2002).  "Each discrete discriminatory act starts a new clock for filing charges alleging that act."

*Id.* at 113.  "The rationale behind the 'discrete act' rule is that when a plaintiff is harmed by a

discrete act, he should be aware of it; '[t]o permit him to wait and toll the running of the statute

simply by asserting that a series of separate wrongs were committed . . . would be to enable him

to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims.'"

*Stephens v. Hofstra Univ. School of Law*, No. 01 Civ. 5388 (DRH) (MLO), 2005 WL 1505601,

at *4 (E.D.N.Y. Jun. 24, 2005) (quoting *Singleton v. City of New York*, 632 F.2d 185, 192 (2d

Cir. 1980)).

   Plaintiffs base their claims on failure to promote, retaliation, denial of investigative

overtime, and various complaints regarding less favorable job assignments, such as requirements

---

[2] The doctrine of continuing violation is not popular with all courts in our district.  *See Trinidad v. N.Y. City Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) ("The courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of 'compelling circumstances.'").  Much of the case law cited by Plaintiffs was decided before the Supreme Court limited the doctrine in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

that they "catch cases" or attend additional training.  United States Supreme Court precedent, and

that of this Circuit, makes clear that failure to promote, denial of transfer, and job reassignments

are discrete acts that cannot form the basis for a continuing violation claim.  *Morgan*, 536 U.S. at

114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire

are easy to identify."); *Lightfoot v. Union Carbide Corp*., 110 F.3d 898, 907 (2d Cir. 1997)

(finding job transfer and discontinuance of a particular job assignment are not acts of a

continuing nature).  Thus, "[e]ach incident of discrimination and each retaliatory adverse

employment decision constitutes a separate actionable 'unlawful employment practice.'"

*Morgan*, 536 U.S. at 114.

      However, acts that constitute a hostile work environment are of a different nature.

Because a hostile work environment claim  "is composed of a series of separate acts that

collectively constitute one 'unlawful employment practice,' it does not matter that some of the

component acts fall outside the statutory time period."  *Morgan*, 536 U.S. at 103.  "Provided that

an act contributing to the claim occurs within the filing period, the entire time period of the

hostile environment may be considered for the purposes of determining liability."  *Id*.

Defendants do not contest that at least some of the actions Plaintiffs allege created a hostile work

environment occurred during the statutory period.

      In sum, Plaintiffs' Title VII claims for actions occurring prior to the 300 days before their

individual filings with the EEOC are dismissed except to the extent Plaintiffs' allegations

support a claim of hostile work environment.

### d.   Timeliness of § 1981, § 1983, State, and City Claims

      Claims under the New York State Human Rights Law, N.Y. Exec. Law § 296

("NYSHRL"), New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 and 8-502 *et*

*seq.* ("NYCHRL"), and § 1983 must be filed in court within three years of the alleged discriminatory act or are considered time-barred. *See Lightfoot,* 110 F.3d at 906 (NYSHRL); *Bumpus v. N.Y. City Transit Auth.*, 883 N.Y.S.2d 99, 109 n.3 (N.Y. App. Div. 2009) (NYCHRL); *Owens v. Okure*, 488 U.S. 235, 250 (1988) (§ 1983). Section 1981 claims have a four year statute of limitations. *Jones v. R.R. Donnelley & Sons Co*., 541 U.S. 369, 382–83 (2004). As under Title VII, hostile work environment claims under these statutes may be based on events outside the statute of limitations period to the extent they constitute "part of the same actionable hostile work environment practice," and at least one act contributing to the claim occurs within the filing period. *Morgan*, 536 U.S. at 103. This action was commenced July 23, 2008, thus, to the extent any claims, other than for hostile work environment, are based upon events that transpired prior to July 23, 2005, under NYSHRL or § 1983, or July 23, 2004, under § 1981, those claims are time barred.

### e. Discrimination Claims Under Title VII

In the summary judgment context, claims brought under Title VII for employment discrimination are analyzed under the three-step burden shifting analysis the Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Id*. at 802–03. The employer does not need to prove by a preponderance of the evidence that the rationale was not discriminatory, but must present a clear explanation for the action. *Gibbs v. Consol. Edison Co. of N.Y., Inc*., 714 F. Supp. 85, 89 (S.D.N.Y. 1989). The burden then shifts to the plaintiff to put forth evidence demonstrating the existence of a genuine issue of material fact as to whether the employer's stated reasons are a pretext for prohibited discrimination. *McDonnell Douglas*, 411 U.S. at 804.

"[T]o defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trs. of Columbia Univ. in City of N.Y.*, 131 F.3d 305, 312 (2d Cir. 1997).

Claims of employment discrimination under the NYSHRL proceed under the same analysis as Title VII.[3] *See Quinn v. Green Tree Credit Corp*., 159 F.3d 759, 765 (2d Cir. 1998) ("New York courts require the same standard of proof for claims brought under section 296 of the Human Rights Law as for those brought under Title VII."); *Landwehr v. Grey Adver. Inc*., 622 N.Y.S.2d 17 (N.Y. App. Div. 1995).

As an initial matter, Plaintiffs' Title VII claims against individual Defendants Kennedy, Moroney, Kelly, and Rooney must be dismissed because there is no basis for personal liability against an individual under that statute. *Tomka v. Seiler Corp*., 66 F.3d 1295, 1313 (2d Cir.

---

[3] Claims under the NYCHRL have traditionally also followed the Title VII framework. *See Shah v. Wilco Systems, Inc.*, 806 N.Y.S.2d 553, 559 (N.Y. App. Div. 2005) ("It is well settled that in determining employment discrimination claims under the New York City Human Rights Law, federal standards are applied."). However, the Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005), mandates that the NYCHRL be interpreted independently from its state and federal counterparts. The law was enacted out of concern that the NYCHRL had been "construed too narrowly." *Williams v. N.Y. City Hous. Auth.*, 872 N.Y.S.2d 27, 31 (N.Y. App. Div. 2009). Thus courts have identified textual distinctions. *See e.g. Farrugia v. North Shore Univ. Hosp.*, 820 N.Y.S.2d 718, 725 (N.Y. Sup. Ct. 2006) (finding federal "severe" or "pervasive" requirement in hostile work environment claims "inconsistent with the City's Human Rights Law"); *Pugliese v. Long Is. R.R. Co.*, No. 01 Civ. 7174 (NGG), 2006 WL 2689600, *12–13 (E.D.N.Y. Sept. 19, 2006) (finding NYCHRL, unlike federal law, permits employers to be held vicariously liability for employee actions). Notwithstanding these changes, New York courts continue to use Title VII and NYSHRL substantive standards in the context of employment discrimination. *Kumaga v. N.Y. City School Const. Auth.*, No. 127817/02, 2010 WL 1444513, at *15 (Table) (N.Y. Sup. 2010) (finding outcome identical under state and city human rights laws); *Wenping Tu v. Loan Pricing Corp.*, No. 103938/05, 2008 WL 4367589, at *8 (N.Y. Sup. Ct. Sept. 23, 2008) (applying broader standards to hostile work environment claims under NYCHRL but using Title VII standards for discrimination claims); *Farrugia*, 820 N.Y.S.2d at 726–27 (N.Y. Sup. Ct. 2006) (analyzing claims under the *McDonnell Douglas* burden shifting framework). The NYCHRL makes it unlawful for employers "to refuse to hire or employ or to bar or to discharge from employment [any] person or to discriminate against [any] person in compensation or in terms, conditions or privileges of employment," on the basis of race or national origin. NYCHRL § 8-107(1). Bearing in mind the NYCHRL's broad remedial goals, the outcome here is nonetheless consistent under the three statutes.

1995) ("We now hold that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII.").  However, NYSHRL does permit individual liability.  *See id.* at 1317.  Therefore all Defendants are included in the discussion below.

### i.  Failure to Promote

In order to make out a prima facie case for discriminatory failure to promote, a plaintiff must show (1) he is a member of a protected class; (2) he was qualified for the job for which he applied; (3) he was denied the job; and (4) the denial occurred under circumstances giving rise to an inference of discrimination on a basis forbidden by Title VII.  *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000).   "The requirement is neither onerous, nor intended to be rigid, mechanized or ritualistic."  *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir. 1995) (internal quotation marks and citations omitted); *Abdu-Brisson v. Delta Air Lines, Inc*., 239 F.3d 456, 466–467 (2d Cir. 2001) ("A plaintiff's burden of establishing a *prima facie* case is *de minimis*." (citing *Cronin,* 46 F.3d at 203–04)).

Defendants move for summary judgment on the grounds that Plaintiffs have not made out a prima facie case and that, even if they have, Plaintiffs cannot show that Defendants' stated legitimate reasons are pretextual.  It is undisputed that Plaintiffs are all members of a protected class in satisfaction of prong one of the test.  The analysis as to the other prongs differs among the Plaintiffs, and each will be discussed in turn.

### 1.  Rosado

Defendants assert that Rosado was not denied a promotion and thus cannot satisfy the third prong of the test.  Defendant Kennedy recommended Rosado for promotion three times between July 1, 2005 and October 30, 2006, when Rosado was promoted to Detective 2nd Grade.  *See* Barnett Decl. Exs. E, M, N, O.  Rosado was recommended for promotion to

Detective 1st Grade—the highest detective grade—by Defendant Moroney on October 18, 2007 and received that designation on November 2, 2007.  *See* Barnett Decl. Exs. P, Q.

Rosado does not contest these facts but asserts that he would have been promoted earlier if not for his race or national origin.  However, Rosado fails to provide any evidence that he was more qualified than any white applicant actually promoted prior to his own promotion in 2006. Plaintiffs' documentation of employment reviews dates back only to 2005, when Rosado was recommended for promotion, *see* Cronin Decl. Ex. N, and other records demonstrates he moved steadily up the list of candidates until he was promoted the next year.  *See* Barnett Decl. Exs. M, N, O.  In any case, a failure to promote prior to that time would have necessarily occurred outside the statute of limitations of 300 days before his EEOC filing on Aug 1, 2007.[4]  Because Rosado cannot demonstrate he was denied promotion within the statutory period, his Title VII claim based on failure to promote is dismissed.

### 2.  Gutierrez

Although Plaintiff Gutierrez was denied a promotion, Defendants assert that Gutierrez cannot demonstrate he was qualified for the promotion in satisfaction of prong two.  Defendant Moroney recommended Gutierrez for promotion to Detective 2nd Grade on February 2, 2007, citing his strong investigative skills, work ethic, and leadership ability.  *See* Barnett Decl. Exs. S, T.  However, in April 2007, Gutierrez engaged in misconduct when he used a NYPD vehicle without authorization.  Gutierrez does not dispute that he took the vehicle, picked up his girlfriend, an unauthorized civilian, and drove to a baseball game and later to a bar and grill.  *See* Barnett Decl. Exs. U, BBB.  As a result he was served with disciplinary charges and placed on

---

[4] As discussed *infra*, § 1981 and § 1983 claims are analyzed under the same substantive framework as Title VII. Although these claims have a longer statute of limitations that would encompass prior actions, because Plaintiffs fail to provide evidence applicable to this period, this ruling applies equally to Plaintiffs' § 1981 and § 1983 claims.

modified assignment.  NYPD policy provides that officers may not be considered for promotion unless they are on full duty status.  *See* Barnett Decl. Ex. V.  Thus, Defendants assert, Gutierrez was no longer qualified for the promotion.

Even if Gutierrez were technically still qualified for promotion at the time it was denied, his misconduct is a sufficient non-discriminatory explanation offered by Defendants to shift the burden to Plaintiff.  Gutierrez offers no evidence that Defendants' explanation is false or that it is more likely that discrimination was the real reason for his employer's decision not to promote him.[5]  *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004) (district court properly dismissed claim where plaintiff  "had not proffered any evidence of facts relating to the termination of his employment that would permit a rational factfinder to infer that the termination was motivated by his race, especially in light of his failure to proffer any evidence of facts to refute the Department's evidence that it had received . . . several accusations against [plaintiff]"); *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000) ("[O]nce the employer has proffered its nondiscriminatory reason, the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.").  Gutierrez admitted to his misconduct in the disciplinary proceedings, and there is no evidence any detective actually promoted was on modified duty. *See* Barnett Decl. Ex. III.  Defendant's motion to dismiss Plaintiff Gutierrez's Title VII claim based on failure to promote is granted.

---

[5] As discussed *infra*, Gutierrez does submit minimal evidence that he and other detectives were not reprimanded previously for using a NYPD vehicle without permission.  *See* Cronin Decl. Ex. F 66–70 (deposition of Defendant Moroney stating Moroney had not reprimanded Gutierrez and non-party Hispanic Detective Berrios for using a NYPD vehicle to attend a wake).  This evidence, though sufficient to infer that retaliation played a part in the later disciplinary actions, does not suggest Defendants' motives for denying his promotion were discriminatory.

### 3.  Flores

Plaintiff Flores was not recommended for promotion to Detective 2nd Grade, a position for which he was qualified.  Flores asserts the denial occurred under circumstances giving rise to an inference of race or national origin discrimination because two white detectives were promoted.  *See Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999)  ("A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably.").  By way of a non-discriminatory explanation, Defendants contend that Flores was not recommended due to his disciplinary charges, poor administrative and investigative skills, and general concerns about Flores's judgment.  *See* Moroney Decl. ¶¶ 7–11.  Flores had been counseled regarding these concerns on several occasions.  Moroney Decl. ¶ 11; Barnett Decl. Exs. KKK (official Charges and Specifications), JJJ (Integrity/Minor Violation Log, Feb. 23, 2007, April 12, 2007, June 20, 2007).  The NYPD Administrative Guide Procedure ("Administrative Guide") No. 320–32 states that candidates for promotion will be evaluated based upon various criteria, including their disciplinary record, clearance rate, and overall experience.  Cronin Decl. Ex. J.

Flores does not deny he engaged in misconduct.  *See* Barnett Decl. Ex. OOO (settlement signed by Flores).  Instead Flores argues that his overall evaluation rating equaled that of the two white detectives who were recommended for promotion by Defendant Moroney on February 2, 2007 and were subsequently promoted.[6]  *See* Barnett Decl. Ex. S; Cronin Decl. Ex. N.  These allegations are insufficient to demonstrate that Defendants' actions were pretextual.  *See, e.g. Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (where unlawful

---

[6] Of the four candidates recommended for promotion, two were white and two were Hispanic.  One of the Hispanic detectives recommended was Gutierrez, whose failure to promote claim is addressed *supra*.  The other, Detective Barrios, is not a party to this action.  *See* Barnett Decl. Ex. Y.

discrimination is demonstrated by the employer's choice of a candidate with lesser qualifications, "[t]he plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question" (internal quotation omitted)). Nothing in the Administrative Guide dictates that recommenders consider only numerical ratings, and Plaintiff does not contest Defendants' assertions of misconduct. Evidence that Plaintiff Flores received some positive reviews does not demonstrate Defendants did not base their decision on negative reports they received. *Warren v. North Shore Univ. Hosp. at Forest Hills*, 268 Fed. Appx. 95, 97 (2d Cir. 2008) (summary order) (evidence plaintiff was good with patients insufficient to overcome summary judgment where defendant denied promotion based on reports plaintiff was bad with patients); *Davis v. State Univ. of N.Y.*, 802 F.2d 638, 641 (2d Cir. 1986) (employer need not prove the person hired had "superior objective qualifications, or that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory" (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258–59 (1981))); *cf. Terry v. Ashcroft*, 336 F.3d 128, 140 (2d Cir. 2003) (defendants' nondiscriminatory explanation that plaintiff had a reputation of being quarrelsome and other employees were more qualified could be pretextual where defendant provided no evidence to support claims). Because Flores "offers no substantive evidence that [Defendants'] asserted reasons for not hiring [him] were false . . . there is no genuine issue of material fact to be decided by a jury." *Warren*, 268 Fed. Appx. at 97.

### 4. Canela

Like Plaintiff Flores, Plaintiff Canela was not recommended for promotion. Defendant Moroney testified he did not recommend Canela because he believed Canela's investigatory,

14

case management, and administrative skills were lacking.  Moroney Decl. ¶ 12; Barnett Decl. Ex. JJJ (Integrity/Minor Violation Log, Feb. 23, 2007, May 18, 2007, Jun. 20, 2007, Aug. 20, 2007, Aug. 21, 2007).  Indeed, Canela's ratings for the 2005–06 and 2006–07 terms, unlike those of Plaintiff Flores, were below those of detectives who were recommended for promotion.  *See* Cronin Decl. Ex. N.  Canela does not refute the characterization of his disciplinary record, nor does he claim the disciplinary record was inappropriately considered.  Instead, Canela relies on broad assertions that Defendant supervisors did not properly apply the factors provided in the Administrative Guide when making recommendations, and disproportionately recommended white officers for promotion.[7]  While such allegations may suffice to create an "inference of discrimination" in support of a prima facie case, they are not evidence that the non-discriminatory reasons given were pretexts for discrimination based on Canela's race.  Because Canela does not put forth evidence demonstrating the existence of a genuine issue of material fact as to whether the stated reasons are a pretext for prohibited discrimination, his failure to promote claim under Title VII is dismissed.

### ii.  Other Discriminatory Acts

Plaintiffs allege a number of additional discriminatory acts that they claim rise to the level of adverse employment actions.  "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. N.Y. City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000).  "A materially adverse

---

[7] Plaintiffs point to Moroney's testimony that his recommendations were to a large degree based on his subjective prioritization of the Administrative Code guideline, and that he could not explain why another Hispanic detective was not recommended.  *See* Cronin Decl. Ex. F.  Next, they say Kennedy did not follow the Administrative Guide because he followed the squad commander recommendations without review.  *See* Cronin Decl. Ex. E 47–48.  They also produce evidence that Kennedy made 333 recommendations but only 44 were Hispanic, *see* Cronin Decl. Ex. K, and that, of Moroney's four recommendations (2 white and 2 Hispanic), Kennedy recommended one white and one Hispanic, *see* Cronin Decl. Ex. M, but only the two white detectives were promoted.  Finally, they cite Rooney's testimony denying knowledge of written criteria.  *See* Cronin Decl. Ex. V.

change is one that 'has an attendant negative result, a deprivation of a position or an opportunity.'"  *Davis v. City Univ. of N.Y.*, No. 94 Civ. 7277 (SHS), 1996 WL 243256, at *8 (S.D.N.Y. 1996) (quoting *Medwid v. Baker*, 752 F.Supp. 125, 136–37 (S.D.N.Y. 1990)). Material adversity is "more disruptive than a mere inconvenience or an alteration of job responsibilities" and "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Galabya*, 202 F.3d at 640 (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).

The alleged adverse employment actions cited by Plaintiffs include: "plaintiffs were refused cash investigative overtime while their white counterparts were permitted cash investigative overtime; refusal to allow plaintiffs to transfer; checking up on plaintiffs Flores and Rosado; refusal to grant days off; requirements that plaintiffs supply a form to justify lateness when white counterparts are not required to [do so]; requirement that plaintiffs adhere strictly to dress code and grooming code and not wear a goatee when white detectives were permitted flexibility with the dress code and the ability to wear a goatee."[8]  Pl. Opp. 25.  Plaintiffs also assert they were subjected to excessive discipline and that Moroney deflated each Plaintiff's evaluations so as to justify promoting two white detectives, who were less qualified than Plaintiffs.  *Id.*

---

[8] To the extent Plaintiffs seek to establish an adverse employment action based on the cumulative effect of the individual acts, the Court rejects such an argument.  *See Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 356 n.22 (S.D.N.Y. 2006) ("Although, as discussed *infra*, Title VII hostile work environment claims and retaliation claims involve different findings regarding adverse employment actions, the Plaintiff cites no law, and the Court is aware of none, that supports the proposition that the Court can consider the cumulative effect of non-adverse employment actions when evaluating an intentional discrimination claim.").

Defendants concede that denial of cash overtime may qualify as an adverse employment action.  However, they assert Plaintiffs were in fact high overtime earners.[9]  Defendants have provided extensive documentation of the overtime earned by each Plaintiff, as well as that of other detectives in the 52nd Precinct.  Plaintiffs suggest that this documentation provides an incomplete picture because it does not distinguish between cash and compensatory overtime.  Pl. Opp. 26 (citing Cronin Decl. Ex. O).  However, they overlook numerous exhibits that do provide such detail.  *See* Barnett Decl. Ex. EE, FF, HH.  These documents demonstrate that Plaintiffs consistently earned cash overtime throughout 2005, 2006, and 2007.  The records show Plaintiff Rosado was the highest cash overtime earner for the 52nd Precinct throughout much of 2007.  During the same period, Flores was consistently one of the top five cash overtime earners in the Precinct, and Canela was the 10th highest cash overtime earner out of 19 detectives in the Precinct.  Because Plaintiffs cannot demonstrate they were denied cash overtime, they do not adequately allege an adverse employment action.

Plaintiffs also assert they were only able to earn arrest overtime, rather than investigative overtime.  According to Plaintiffs, arrest overtime requires the detective to generate an arrest on an open case in order to incur overtime.  Because they claim they were not authorized to complete investigative overtime for administrative work, their cases took longer to close, and this resulted in them having more open cases than white officers, who were allowed to use overtime to catch up on their work.  *See* Cronin Decl. Ex. G (Plaintiffs' EEOC complaints).  Exhibit LL supports finding a discrepancy both in the total amount of investigative overtime earned by white detectives versus Hispanic detectives and the percentage of such overtime

---

[9] Plaintiff Gutierrez does not claim a failure to provide opportunity for investigative overtime.  *See* Pl. Opp. 1.

compared with arrest overtime.[10]  By way of nondiscriminatory explanation for the discrepancy, Defendants state they monitor and limit overtime so as to prevent individual detectives from going over established overtime caps and from making the Top 400 list of NYPD overtime earners.  Barnett Decl. Exs. J 52, 78–80, 84; BB, CC.  However, given that the white detectives identified received as many or more total overtime hours as Plaintiffs and received more investigative overtime hours, Plaintiffs raise an issue of fact as to whether Defendants' explanation is pretextual.  Thus, Plaintiffs Rosado, Canela, and Flores adequately plead a Title VII claim for denial of investigative overtime.

Plaintiffs next allege they were required to supply a form to justify lateness, which white detectives were not required to do.  These forms reduced Plaintiffs' pay to exclude time they were not in the office.  Plaintiffs do not allege Defendants were unjustified in requiring Plaintiffs to fill out the forms or that the requirement was anything but consistent with NYPD policy.  *See Nicastro v. Runyon*, 60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999) ("[A]ctions complained of by plaintiff, such as scrutiny from his supervisors that he deemed excessive, requiring documentation for sick leave, scrutiny of his wife's sick leave, . . . or threatening to investigate medical fraud, do not constitute 'adverse employment actions.'").  Nor does the evidence support Plaintiffs' assertion that white detectives were not required to submit late forms to support an inference of discrimination.  *See* Ex. JJJ (documenting detectives required to submit late forms, including multiple detectives other than Plaintiffs).  Plaintiffs' Title VII claim based on the requirement that they supply late forms is dismissed.

---

[10] According to the exhibit, the three white officers identified earned 94 hours (71.8%), 84 hours (77.1%), and 33 hours (44.6%) of investigative overtime in 2007, while Plaintiffs Rosado, Canela, and Flores earned 24 hours (34.3%), 28 hours (52.8%), and 15 hours (23.8%) of investigative overtime respectively.  Ex. LL.

Plaintiffs next claim Lt. Moroney deflated the evaluations of Hispanic detectives in order to justify promoting two white detectives who were less qualified, non-parties Kruse and Degrazia.  Negative employment evaluations do not generally rise to the level of adverse employment actions.[11]  *See Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 756 (2d Cir. 2004) (holding negative employment evaluation that had no effect on terms and conditions of complainant's employment did not constitute adverse employment action); *Payne v. State of N.Y. Power Auth.*, 997 F. Supp. 492, 500 (S.D.N.Y. 1998) (negative performance evaluations alone did not constitute adverse employment actions).  Here, documents provided by Plaintiffs to the court demonstrate Plaintiff Rosado received a ranking of 4.5 in both years documented, the highest ranking received by any Detective reviewed.  Flores received rankings of 4 and 4.5, and Gutierrez received the ranking of 4 in these same years.  Given the strength of these rankings compared with those of other detectives in the unit, and the fact that both Rosado and Gutierrez were recommended for promotion, it is difficult to see how these rankings could have had any negative effect on the Plaintiffs.  *See* Pl. Opp. 20–22 (recognizing the strength of Plaintiffs' ratings).  Only Detective Canela received relatively lower ratings of 3.5 and 4.  As noted *supra*, Defendant Moroney described Canela's skills and disciplinary record as lacking.  Assuming Canela states a prima facie case, a *de minimis* requirement, he provides no evidence that Defendants' explanation for his low ranking is pretextual.  As such, Plaintiffs' Title VII claims based on deflated evaluations are dismissed.

---

[11] Cases cited by Plaintiffs that provide negative evaluations can rise to such a level are in the context of retaliation claims, which, as discussed *infra*, have a lower standard.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) (in the context of retaliation claim, "[l]esser actions such as negative employment evaluation letters may also be considered adverse") (citing *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir. 1999)).

Plaintiffs next allege Defendants refused to act on their transfer requests.  However, Plaintiffs do not contend that they sought transfer to a different type of position or that the transfer would in any way alter the terms and conditions of their employment.  *See Lee v. N.Y. State Dep't of Health*, Nos. 98 Civ. 5712 (RMB) (HBP), 99 Civ. 4859 (RMB) (HBP), 2001 WL 34031217, at *18 (S.D.N.Y. Apr. 23, 2001) (finding denial of transfer request not adverse employment action where "plaintiff admits that the transfer request was for a new supervisor, as opposed to a change in the terms or conditions of her employment"); *see also Galabya,* 202 F.3d at 640 (finding no adverse employment action where "[a]ppellant has not produced evidence to show that the transfer was to an assignment that was materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement").  There is no evidence that Plaintiffs would receive different types of assignments upon transferring or that non-minority detectives were readily transferred.  *Cf. Terry*, 336 F.3d at 144 (finding forced transfer was adverse employment action where plaintiff alleged "INS transferred him . . . with the intent to harass him, and has put forth evidence sufficient to permit a trier-of-fact to conclude that his supervisors believed that he would find the new assignment to be adverse").  To the extent Plaintiffs' claims are based on failure to transfer, they are dismissed.

Finally, Plaintiffs' allegations that Defendants refused to grant days off, required that Plaintiffs adhere more strictly to the dress code than white detectives, and "checked up on" plaintiffs Flores and Rosado are not adverse employment actions.  While such actions may have made the work place unpleasant, and will be considered in the context of Plaintiffs' hostile work environment claim, Plaintiffs fail to demonstrate these actions had any attendant negative result.  *See Terry*, 336 F.3d at 147 (denial of annual leave time was "legally insufficient to constitute an adverse employment action"); *Fridia v. Henderson*, No. 99 Civ. 10749 (BSJ), 2000 WL 1772779

(S.D.N.Y. Nov. 30, 2000) (finding allegations of excessive work, denials of requests for leave with pay, and poor treatment by supervisors were not materially adverse employment actions because plaintiff could not demonstrate that any of these allegations had an attendant negative result); *Lee,* 2001 WL 34031217, at *16 ("being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions . . . because they [do] not have a material impact on the terms and conditions of Plaintiff's employment." (quoting *Katz v. Beth Israel Med. Ctr.*, No. 95 Civ. 7183 (AGS), 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001))).  As such, Title VII claims based on these allegations are dismissed.

### f.  Retaliation

Title VII makes it unlawful for an employer to discriminate against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation under Title VII, a plaintiff must establish that (1) she was engaged in a protected activity; (2) the employer was aware of that activity; (3) an employment action adverse to the plaintiff occurred; and (4) there existed a causal connection between the protected activity and the adverse employment action.[12]  *See Holtz*, 258 F.3d at 79.

For an employment action to qualify as retaliation, it must be "materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or

---

[12] The same standard is applied to retaliation claims under the NYSHRL.  *See Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 312–13 (2004) (applying same standard for Title VII and NYSHRL retaliation claims).  The elements of retaliation under the NYCHRL differ only in "that the plaintiff need not prove any 'adverse' employment action; instead, he must prove that something happened 'that would be reasonably likely to deter a person from engaging in protected activity.'"  *Jimenez v. City of New York*, 605 F.Supp.2d 485, 528 (S.D.N.Y. 2009) (quoting NYCHRL § 8-107(7)).  Applying this standard to the case at bar, the outcome is the same as that under Title VII.

supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53,

57 (2006) (quotation marks and citation omitted).  This standard is somewhat broader than the

adverse employment action standard utilized in Title VII discrimination cases.  *See id.* at 67.

The *McDonnell Douglas* burden shifting analysis used in Title VII discrimination claims

also applies to retaliation claims brought pursuant to Title VII.  *Terry*, 336 F.3d at 141.  If the

plaintiff establishes a prima facie case, the burden shifts to defendants to articulate a legitimate,

non-retaliatory reason for the adverse employment action.  Once they do so, the burden shifts to

the plaintiff to establish the retaliation was a substantial reason for the adverse employment

action, "whether or not it was the sole cause."  *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033,

1039 (2d Cir. 1993).

Gutierrez claims he was retaliated against when he received unfair punishment for his

April 7, 2007 violation of NYPD policy by using a NYPD vehicle without authorization.  Shortly

thereafter, he was put on "modified assignment," transferred to Bronx Central Booking for over

two years, and was docked vacation days.  Because the modified assignment and transfer made

Gutierrez ineligible for promotion, these actions rise to the level of adverse employment actions

in the context of retaliation.  *See Terry*, 336 F.3d at 143–48 (adverse employment actions

included internal transfer; loss of vehicle privileges accorded other employees; suspension of

firearms privileges; shunning and disparagement).  That these events occurred so quickly after

the OEEO complaint was filed is sufficient to establish causation for the purposes of a prima

facie case.[13]  *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590,

593 (2d Cir. 1988) ("Proof of the causal connection can be established indirectly by showing that

the protected activity was closely followed in time by the adverse action.").

_____

[13] While Defendants urge Gutierrez received no punishment until 2009, Defense Exhibit III states he was placed on modified duty and reassigned almost immediately on April 9, 2007.  Barnett Decl. Ex. III, at 6.

Defendants assert the punishment was not excessive.  As reflected in the transcript of the mitigation hearing, Gutierrez received a higher than average punishment because he drove a long distance, he used the car for a social outing, and he used the car without permission for over six hours, keeping it late into the night and only returning it when he was caught by a superior officer.  *See* Barnett Decl. Ex. III.  However, Gutierrez offers evidence, albeit limited, that he and other officers in the 52nd Precinct had previously used vehicles without authorization without punishment.  Cronin Decl. Ex. F, at 68–70 (deposition of Defendant Moroney).  It is not clear from the record who initiated Gutierrez's status modification and reassignment.  In any case, there is a material issue of fact as to whether any Defendant played a role in the modification and transfer and if they did so in retaliation for Gutierrez's protected complaint. The motion to dismiss this claim is denied.

Plaintiffs Rosado and Flores assert they were retaliated against when they were placed in the Integrity Log for having improperly "closed cases" when "virtually everyone else in the squad had improperly 'closed cases' but no one else was placed in the 'Integrity Log.'"  Pl. Opp. 29.  Assuming Plaintiffs can establish that this was an adverse employment action, Plaintiffs do not provide sufficient evidence to support an inference of retaliation.  First, the Integrity Log contains notations regarding case management by Rosado and Flores prior to their complaints to the OEEO.  *See* Barnett Decl. Ex. JJJ; *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").  There is no evidence that these citations changed or increased in frequency following the protected activity.  Furthermore, Plaintiffs do not offer support for their claim that other employees were not written up regarding inappropriate case

23

closing.  The Integrity Log documents violations by numerous other detectives alongside those of Flores and Rosado.  *See* Barnett Decl. Ex. JJJ.  Plaintiffs' allegations are insufficient to overcome summary judgment with respect to this retaliation claim by Rosado and Flores.[14]

Next, Plaintiff Canela alleges he was retaliated against when he was required to "catch" an inordinate number of cases and was transferred out of the squad when he was unable to close these cases.  Canela provides no evidence that he caught substantially more cases than other detectives; in fact, the Operational Activity Statistics for the Precinct demonstrate he did not.  *See* Ex. PPP.  Nor does he offer support for his allegation that his transfer had any adverse employment effect, particularly given that the transfer lasted only one hour.  *See* Barnett Decl. Ex. RRR.  While the standard in retaliation claims is low, Canela provides virtually no support for his claim that these actions had adverse consequences.  As such, he does not establish a prima facie claim for retaliation.

Finally, Plaintiffs Rosado, Canela, and Flores assert they were retaliated against when they were required to attend training classes while white officers were not and when their arrests were reassigned, both of which reduced their ability to work overtime.  Defendants assert that these claims are not adverse employment actions as a matter of law.  As to the training classes, Plaintiffs do not allege how many classes they were required to attend, how much time they spent in the classes, or how the classes affected their ability to earn overtime.  Nor do they provide any evidence that white detectives were not required to attend the classes.  Because

---

[14] Plaintiff Rosado states in his deposition that he was told by another Lieutenant that Defendants Rooney and Moroney were "looking to hurt" him.  Cronin Decl. Ex. B, at 79.  Although this statement would suggest retaliatory intent, it is inadmissible hearsay, and Plaintiff presented no sworn statement from the declarant.  Thus the statement is insufficient to raise a genuine issue of fact.  *See* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."); *Patterson*, 375 F.3d at 219 ("[A]n affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial.").

Plaintiffs cannot state a prima facie case, the retaliation claim based on the required training classes is dismissed.

With regard to the reassignment of arrests, given the more lenient standard for retaliation claims and the alleged impact on Plaintiffs' pay potential, the Court accepts Plaintiffs' allegations as sufficiently adverse.  To the extent they address the case reassignments, Defendants claim they were trying to prevent Plaintiffs from going over their overtime quotas. However, the record shows that multiple white detectives to whom the cases were allegedly reassigned had similar levels of overtime.  *See* Barnett Decl. Ex. LL.  While Plaintiffs present very little evidence demonstrating which cases were reassigned and when, viewing the evidence in their favor, a genuine issue of material fact exists as to whether retaliation played a role in the reassignments, and the motion to dismiss this claim is denied.

### g.   Hostile Work Environment

A hostile work environment is created "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Oncale v. Sundowner Offshore Serv.*, *Inc.*, 523 U.S. 75, 78 (1998) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)).  To establish a *prima facie* hostile work environment claim under Title VII, a plaintiff must demonstrate (1) a defendant's conduct was objectively severe or pervasive so as to create an environment that a reasonable person would find hostile and abusive, (2) that he subjectively perceived the environment to be hostile or abusive, and (3) defendants created said

environment because of a plaintiff's protected status.[15]  *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citing *Gregory* v. *Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)).

Among the factors to consider when determining whether an environment is sufficiently hostile are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 23.  "While a mild, isolated incident does not make a work environment hostile, the test is whether 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'"  *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) (quoting *Torres v. Pisano*, 116 F.3d 625, 632 (2d Cir.1997)).  "The environment need not be unendurable or intolerable.  Nor must the victim's psychological well-being be damaged."  *Terry*, 336 F.3d at 148 (internal quotation marks and citations omitted).  "[T]he fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases."  *Whidbee*, 223 F.3d at 70 (quoting *Torres*, 116 F.3d at 631).  Where reasonable jurors could disagree as to whether alleged incidents would have adversely altered the working conditions of a reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law.  *Patterson*, 375 F.3d at 227.

---

[15] The same standard is applied to NYSHRL claims.  *See Demoret v. Zegarelli*, 451 F.3d 140, 152 (2d Cir. 2006) (standard of liability for hostile work environment claims under New York State Human Rights Law, N.Y. Exec. Law § 296, is same as for federal claims).  The standard under the NYCHRL is broader, as it does not require that conduct be "severe" or "pervasive" to constitute a hostile work environment.  *See Williams*, 872 N.Y.S.2d at 40; *Kumaga*, 2010 WL 1444513, at *14 (applying broader standard but still finding petty, slight, or trivial inconveniences are not actionable).  Because the hostile work environment claims are permitted to go forward under Title VII, they also go forward under the NYSHRL and NYSHRL.

In support of the hostile work environment claim, Plaintiffs cite to the same allegations of discrimination already discussed in this decision, including denial of investigative overtime, excessive disciplinary actions, failure to promote, unfavorable work assignments such as required trainings, reassignment of arrests, denial of time off, denial of transfer requests, and denial of the opportunity to "sleep over" and get overtime.  Furthermore, they list a variety of acts allegedly committed by Defendant Moroney, including that he deflated their evaluations, posted a sign reading "Help Wanted No Irish Need Apply," transferred out minority officers and transferred in white officers, put a shamrock screensaver on Canela's computer, imposed a more strict dress code for Plaintiffs than for white officers, took no action on Plaintiffs' transfer requests, and that he made multiple statements Plaintiffs interpreted as harassing or threatening.

Defendants claim the conduct is not sufficiently severe to create a hostile work environment because "there are no allegations or evidence in the record that plaintiffs could not do their jobs."  Def. Mem. Supp. Mot. Dismiss 45.  However, Plaintiffs allege the actions prevented them from closing cases, accruing overtime, and ultimately from receiving promotions.  While this Court has determined that Plaintiffs lack sufficient evidence to overcome summary judgment for Title VII discrimination claims based on many of these allegations viewed individually, taken together these actions were "sufficiently continuous and concerted to have altered the conditions of [Plaintiffs'] working environment."  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002); *see also Terry*, 336 F.3d at 148–49 (plaintiff made out hostile work environment claim where plaintiff was transferred to multiple units, denied privileges, and supervisor instructed co-workers not to speak to plaintiff; conduct was not severe but was pervasive).  As discussed *supra*, issues of fact remain at least with regard to the assignment of overtime and the reassignment of arrests.  Furthermore, issues of fact remain regarding

Defendant Moroney's intent in statements he made in the presence of the Plaintiffs, and the extent of differential treatment among white and minority detectives.[16]  *See Terry*, 336 F.3d at 139 (holding in age discrimination case that "weight to be given these comments [regarding plaintiff's age] is a matter for the jury, which could infer that age was a factor in promotion decisions"); *Patterson*, 375 F.3d at 229–230 (where plaintiff alleged defendant refused to speak to him and always saluted white officers but never returned a salute from plaintiff, "whether the alleged conduct occurred and whether, in light of the totality of the circumstances, it was sufficiently humiliating to alter the conditions of [plaintiff's] employment are questions to be answered by a factfinder").  Interpreting the facts in the light most favorable to the Plaintiffs, as this Court must, Plaintiffs adequately allege a hostile work environment claim.  The motion to dismiss this claim is denied.

### h.  Section 1981 and 1983 Claims

Most of the substantive standards that apply to claims of discriminatory conduct and retaliation in violation of Title VII also apply to claims in violation of § 1981 and § 1983. *Patterson*, 375 F.3d at 226–27.  "Likewise, most of the standards applicable to the conduct alleged to constitute hostile work environment in violation of Title VII are also applicable to [a plaintiff's] employment claims under § 1981 and his equal protection claims under § 1983." *Patterson*, 375 F.3d at 225.  However, in *Patterson v. County of Oneida*, the Court of Appeals for the Second Circuit identified a number of differences between Title VII and § 1981 and § 1983.  375 F.3d at 225–26.  First, claims under 42 U.S.C. § 1981 and § 1983 need not be asserted

---

[16] For example, with regard to the dress code, Plaintiffs cite incidents during which they witnessed minority detectives reprimanded with regard to goatees and ties while white detectives, also present, were not.  Plaintiffs also provide a photograph showing white detectives wearing goatees.  *See* Cronin Decl. Ex. P.  Defendants provide evidence in response that Moroney instructed four detectives, two Hispanic, one white, and one black about their facial hair.  *See* Barnett Decl. Ex. JJJ.  These discrepancies are better resolved by a jury.

within the 300-day period applicable to Title VII claims. *Id.* at 225; *see also supra*. Second, where the defendant sued for discrimination is a municipality, or an individual sued in his official capacity, the plaintiff must show that the challenged acts were performed pursuant to a municipal policy or custom. *Id.* at 226 (citing *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 733–36 (1989) (§ 1981); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978) (§ 1983)). Third, individuals may be held liable under § 1981 and § 1983 for certain types of discriminatory acts, including those giving rise to a hostile work environment. *Id.* (citing *Whidbee*, 223 F.3d at 75 (§ 1981); *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753–54 (2d Cir. 2003) (§ 1983)).[17]

The claims adequately alleged against Defendants under Title VII include discrimination based on denial of overtime, retaliation based on disciplinary actions taken against Gutierrez and reassignment of Rosado, Flores, and Canela, and hostile work environment.

### i. City of New York and Defendants Sued in Their Official Capacities

To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation. *Patterson*, 375 F.3d at 226 (citing *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). A plaintiff may establish a policy or practice "by demonstrating that the actions of subordinate officers are sufficiently widespread to constitute the constructive acquiescence of senior policymakers." *Sorlucco*, 971 F.2d at 871 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988)). "However, before the actions of subordinate city employees can give rise to . . . liability, their discriminatory practice must be so manifest as to imply the constructive acquiescence of senior policy-making officials." *Id*.

---

[17] *Patterson* also notes that, in certain circumstances, a Title VII claim may be established through proof of a defendant's mere negligence, but that a plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must show that the discrimination was intentional. *Patterson*, 375 F.3d at 226. Here, Plaintiffs' claim was not predicated on negligence but on intentional discrimination.

Here, Plaintiffs do not provide admissible evidence from which a rational factfinder could find that discrimination against Hispanics in employment decisions or hostile actions against Hispanic detectives in the Precinct was so widespread as to permit an inference of policy or custom.[18]  Plaintiffs rely on a Consent Decree Settlement in a 2005 lawsuit involving discrimination against Hispanics by the NYPD, *see* Barnett Decl. Ex. LLLL, and Defendant Rooney's admission to having been sued in the past, *see* Cronin Decl. Ex. V.  Yet, Plaintiffs do not point to any language in the Settlement that supports finding a policy of discrimination here. In fact, the Settlement expressly states that "nothing contained herein shall be deemed to constitute a policy or practice of the City of New York," which expressly denied "any and all liability arising out of Plaintiffs' allegations."  Barnett Decl. Ex. LLLL, at 1, ¶ 40.

Plaintiffs do not allege sufficient facts to demonstrate that the practices of denying overtime, retaliation, or the actions underlying their hostile work environment claim were pervasive.  The only individuals alleged to participate in the policy are those named in this suit. *See Patterson*, 375 F.3d at 227 (finding allegations of policy conclusory where plaintiff could identify only two persons who made racially offensive comments to him).  Because Plaintiffs fail to show a genuine issue to be tried as to the existence of a policy or custom, the § 1981 and § 1983 claims against the City of New York and the individual Defendants sued in their official capacities are dismissed.

### ii.  Defendants Sued in Their Individual Capacities

In order to make out a claim for individual liability under § 1981 and § 1983, "a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory

---

[18] The majority of Plaintiffs' briefing on this issue is focused on discrimination in promoting Hispanic officers. Because the failure to promote claims have been dismissed, this information is not relevant.

action." *Whidbee,* 223 F.3d at 75 (internal quotation marks omitted).  Personal liability must be

"predicated on the actor's personal involvement" in the claimed violation.  *Id.*; *Patterson*, 375

F.3d at 229 (citing *Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d at 122).

"Personal involvement, within the meaning of this concept, includes not only direct participation

in the alleged violation but also gross negligence in the supervision of subordinates who

committed the wrongful acts and failure to take action upon receiving information that

constitutional violations are occurring."  *Patterson*, 375 F.3d at 229 (citing *Colon v. Coughlin,*

58 F.3d 865, 873 (2d Cir. 1995)).

Rather than rebutting Plaintiffs' assertion that individual Defendants were personally

involved, Defendants Kelly, Kennedy, Rooney, and Moroney claim they are entitled to qualified

immunity.  Qualified immunity shields government actors performing discretionary functions

from liability for civil damages "insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known."  *Lennon v.*

*Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18

(1982)).  "Qualified immunity balances two important interests—the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials from

harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v.*

*Callahan*, 129 S.Ct. 808, 815 (2009).  Here, Plaintiffs allege the individual Defendants acted

knowingly in their discriminatory conduct, which would as such be objectively unreasonable.

*See Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity does not protect "those who

knowingly violate the law").  Because a number of claims have survived summary judgment

based on intentional conduct, Defendants may not avail themselves of qualified immunity.

####     i.    Section 1985 Claims

In order to state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (citing *Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006)). A § 1985(3) "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Cine SK8, Inc.*, 507 F.3d at 791 (quoting *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (internal quotation marks omitted)).

Although a conspiracy "need not be shown by proof of an explicit agreement," a plaintiff must demonstrate at least that "parties have a tacit understanding to carry out the prohibited conduct." *Thomas,* 165 F.3d at 146 (internal quotation marks omitted); *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end") (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). A "complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d 162, 169 (E.D.N.Y. 2005) (quoting *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999)). A conspiracy to violate Title VII cannot form the basis of a Section 1985(3) claim. *See Great Am. Fed. Sav. & Loan v. Novotny*, 442 U.S. 366, 378 (1979).

32

Plaintiffs allege Defendants Kelly, Kennedy, Moroney, and Rooney "agreed together to implement, direct and/or participate in a program to deny Plaintiffs, and other minority officers similarly situated, promotions to Detective Second and First Grade solely because of their race, national origin and opposition to discrimination."  Compl. 23.  They provide no evidence of agreement between the Defendants to support a finding of conspiracy.  That they worked for the same organization and followed the same alleged policy is insufficient.  *See Cine SK8, Inc.*, 507 F.3d at 792 (finding letter from board member citing discussions and "strong consensus" among board members insufficient evidence of conspiracy to survive summary judgment).  Nor do Plaintiffs raise any argument on this matter or point to any facts supporting a conspiracy in their opposition papers.  Because Plaintiffs' factual allegations do not support finding a conspiracy, their § 1985 claims are dismissed.

### IV. Conclusion

For the reasons set forth herein, the Court denies Defendants' motion for summary judgment on Plaintiffs' Title VII, retaliation, and hostile work environment claims only to the extent noted above.  Defendants' motion for summary judgment on Plaintiffs' § 1981 and § 1983 claims are granted with respect to Defendant City of New York and the individual Defendants sued in their official capacities and denied with respect to the Defendants sued in their individual capacities.  Plaintiffs' § 1985 claims are dismissed as to all Defendants.  All claims against the NYPD are dismissed.

The parties are to consult with each other concerning the future progress of this litigation. Should the parties find it useful, the Court will favorably entertain an agreed motion to refer the

case to mediation or to pursue other forms of resolution.  Alternatively, the parties are to advise

the Court of when they will be prepared to proceed to trial.

SO ORDERED.

Dated: November 29, 2010
       New York, NY

U.S.D.J.