UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

ROLAND GUTIERREZ, FRANKIE ROSADO, RENE
CANELA AND DAVID FLORES,

$\hspace{8cm}$ Plaintiff,

-against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT[1] and RAYMOND KELLY,
COMMISSIONER, DEPUTY CHIEF STEPHEN R.
KENNEDY, LT. KEVIN MORONEY and DEPUTY
INSPECTOR RAYMOND ROONEY,

$\hspace{8cm}$ Defendants.

------------------------------------------------------------------------ x

**DEFENDANT'S
REQUESTED JURY
<u>INSTRUCTIONS</u>**

08 Civ 6537 (LBS)

$\hspace{2cm}$ Defendants, the City of New York, Raymond Kelly, Stephen R. Kennedy, Kevin

Moroney and Raymond Rooney, by their attorney, Michael A. Cardozo, Corporation Counsel of

the City of New York, pursuant to Rule 51 of the Federal Rules of Civil Procedure, respectfully

request that the Court give the following instructions to the jury.

---

[1] $\hspace{0.5cm}$ Defendants assert the New York City Police Department is not a suable entity. Under the New York City Charter, "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter Ch. 17, § 396. No exception exists with respect to the NYPD, FDNY and EMS. Therefore, they are not suable entities. *See, e.g., Holder v. State of New York*, 1998 U.S. Dist. LEXIS 16756, No. 98 Civ. 0354, 1998 WL 744021, at *4 (S.D.N.Y. October 26, 1998); *Campbell v. Department of Correction*, 1996 U.S. Dist. LEXIS 2021, 95 Civ. 3242, 1996 WL 79869, at *1 (S.D.N.Y. Feb. 26, 1996). *Parker v. DeBuono*, 199 U.S. Dist. LEXIS 15019, *5-6 (S.D.N.Y. 1999). *See also, Petway v. City of New York*, 2005 U.S. Dist. LEXIS 37783, *1-8 (E.D.N.Y. 2005). The Court has already dismissed all claims against the New York City Police Department. *See* Gutierrez v New York City, 756 F. Supp.2d 491, 498-99 (SDNY 2010). Accordingly, defendants request that the caption be amended to withdraw the New York City Police Department as a defendant.

## Table of Contents

| | | |
|---|---|---|
| **Request No. 1:** | **Introductory Remarks** | p. 3 |
| **Request No. 2:** | **Evidence** | p. 5 |
| **Request No. 3:** | **Credibility of Witnesses** | p. |
| **Request No. 4:** | **Prior Inconsistent Statements** | p. |
| **Request No. 5:** | **Interested Witnesses** | p. |
| **Request No. 6:** | **Expert Witnesses** | p. |
| **Request No. 7:** | **Inferences** | p. |
| **Request No. 8:** | **Deposition Testimony** | p. |
| **Request No. 9:** | **Burden of Proof** | p. |
| **Request No. 10 A-E:** | **Nature of Plaintiff's Claims & Liability** | p. |
| **Request No. 11 A-C:** | **Damages** | p. |
| **Request No. 12-17:** | **Closing Instructions** | p. |

**Defendants' Request To Charge No. 1**
<u>**Introductory Remarks**</u>

       Members of the jury, the court now gives you the following instructions:

<u>**Role of the Court**</u>

       1.  My duty at this point is to instruct you as to the law.  On these matters of law, you must take the law as I give it to you.  If anyone has stated a legal principle different from any that I state to you in these instructions, it is my instructions that you must follow.  Similarly, you must not substitute your own notions or opinions of what the law is or should be.  It is your duty to accept these instructions of law and apply them to the facts as you determine them to be.

       2.  You should not single out any one instruction, word or phrase as alone stating the law.  Rather, you must consider all of my instructions taken as a whole.  You will then apply your common sense, and after listening to what I tell you about the law, determine from what you think this evidence shows how this case should be decided.

       [Authority: Modern Federal Jury Instructions (1988) ("MFJI"), Instruction 71-2.]

       3.  As members of the jury, your role is to decide and pass upon the fact issues in the case.  You are the sole judges of the facts.  Because that is so important, you may hear me repeat it more than once.  You must determine the facts from what you consider to be the believable or credible evidence.  You must determine the weight and significance of the evidence, both the testimony and the exhibits.  You must decide the credibility and truthfulness of the witnesses.  You must draw whatever reasonable inferences may be drawn from the facts as you find them.  And you have the job of resolving whatever conflicts may exist in the evidence.

       4.  With respect to any factual matters, you must rely upon your own recollection of the evidence.  What the parties or attorneys may have said with respect to matters in evidence,

whether in questioning witnesses or in argument, is not to be substituted for your own recollection or evaluation of the evidence.  Similarly, anything that I may have said during the trial or during these instructions as to any factual matter is not to be substituted for your own recollection or judgment.

      5.   During the trial, I have been called upon to make rulings on various questions. There may have been objections or motions may have been made to strike answers.  These are matters of law and you should not consider them.  It is the duty of the attorneys on each side of the case to object when the other side offers testimony or evidence that the attorney believes is not properly admissible.   Therefore, you should draw no inference from the fact that the attorneys objected to specific testimony or evidence.  Nor should you draw any inference from the fact that I may have sustained or overruled an objection.

      6.  If at any time I instructed you to disregard anything that was said, you must follow that instruction.  If at any time I instructed you that the parties stipulated that a fact was true, you must accept that fact as true.  You should not draw any inference from the fact that upon occasion I asked questions of certain witnesses.  Those questions were intended only to clarify or speed up matters and were not intended to suggest any opinions on my part as to the verdict that you should render or as to the credibility of any witness.

      7.  From time to time, the attorneys and I may have had side bar conferences and other conferences out of your hearing.  None of these conferences should enter into your deliberations at all.

[Authority: MFJI, Instruction 71-3.]

      8.  You are to conduct your duty as jurors in an atmosphere of complete fairness and impartiality, without bias, prejudice or sympathy for or against the plaintiff or defendants.

You are to evaluate the evidence calmly and objectively. Your verdict must be based solely upon the evidence, or lack of evidence, developed at this trial. [Authority: MFJI, Instructions 71-4 and 71-10.]

**Defendants' Request To Charge No. 2**
**Evidence**

9. What then, does the evidence that you are about to consider consist of? It is the testimony of witnesses who appeared before you, together with documents and other objects that may have been received into evidence. Evidence is also admissions and stipulations of fact. Statements and arguments of counsel are not evidence. The law recognizes two types of evidence, direct and circumstantial evidence. Direct evidence is where a person testifies as to what they themselves saw or heard or that which they have knowledge of by virtue of their own senses. Circumstantial evidence consists of proof of facts and circumstances from which, in terms of common experience, one may reasonably infer the ultimate fact sought to be established. Such evidence, if believed, is of no less value than direct evidence. A claim must be established by the party bearing the burden of proof for that particular claim, and either circumstantial or direct evidence may be used. [*Sarter v. Arkansas Gas Corp.,* 321 U.S. 620 (1943); *Conn. v. Young*, 267 F.2d 725 (2d Cir. 1959); "FJPI" Section 71.08; "PJI" 1:90.]

10. The evidence in this case consists of the sworn testimony of all the witnesses, no matter which side called them, together with the exhibits which I have admitted in evidence. Now, questions are not evidence. The evidence is the answers. The questions are useful only to the extent that they permit you to understand the meaning and significance of the answers. The exhibits received in evidence are also evidence. Any evidence as to which an objection was sustained by me and any answer or argument that I ordered to be stricken out and disregarded by

you must be disregarded by you in its entirety because I have ruled that as a matter of law it is not evidence in this case.

11.   Now, in assessing whether any party proved something, you are instructed that you need not rely totally on direct evidence, or statements by a witness that he knows something by virtue of his own senses -- because he saw, felt or heard something. The law also permits inferences to be drawn by you from all the surrounding facts of a given situation. This is referred to as circumstantial evidence, as distinguished from direct evidence.

12.   In the case of circumstantial evidence, proof is given of facts and circumstances, from which one may infer other connected facts that reasonably follow in our common experience as inhabitants of this earth. It is applying reason and common sense based upon facts established to your satisfaction. In simple terms, you reason from an established fact to another fact as a logical consequence.

13.   I will give you an example of circumstantial evidence. Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day. Assume that the courtroom blinds are drawn and you cannot look outside. As you are sitting here, someone walks in with an umbrella which is dripping wet. Somebody else then walks in with a raincoat which is dripping wet. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that between the time you arrived at the courthouse and the time these people walked in, it had started to rain.

14.   That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from an established fact the existence or the

nonexistence of some other fact.  All evidence is important, and you should, of course, consider all evidence, whether direct or circumstantial, in making your decision.

[Authority: MFJI, Instructions 74-1 and 74-2; *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 (1983).]

**Defendants' Request To Charge No. 3**
**Credibility of Witnesses**

15.   You, the jurors, are the sole judges of the credibility and truthfulness of any witness and the weight the testimony of that witness deserves.  You should scrutinize the testimony that a witness gives and every matter in evidence in the case that tends to indicate whether the testimony is worthy of belief.  Here again you are expected to use your common sense.  Did the witness impress you as honest, open and candid?  Or did the witness appear evasive or as though they were trying to hide something?  How responsive was the witness to questions posed on direct examination and cross examination?

16.   You may consider the motive of the witness, and the demeanor of the witness, that is to say, the manner in which he or she gives testimony on the stand.  You should consider the opportunity that the witness had to observe the facts concerning which the witness testifies, the plausibility, probability or improbability of the testimony in the light of all the facts in the case, and you should also consider any relationship that the witness may have to either side of the case or the manner in which any witness may be affected by, or interested, in the verdict.

17.   There is no magic formula to evaluate the truthfulness of witnesses.  In your everyday affairs, each of you determines for yourself the reliability of statements made to you by other people and those same tests that you use in your everyday dealings should be applied in your jury deliberations.  You use common sense; you rely on your human experience.

18. If you find that a particular witness has testified falsely in any one material part of his or her testimony, you may look with distrust upon the other evidence given by that witness. And if you find any witness testified in a manner that is willfully and intentionally false, you may disregard all evidence given by that witness or you may accept that part you do believe and disregard that part you believe is false.

[Authority: MFJI, Instruction 76-1.]

19. If you find that any witness has willfully testified falsely as to any material fact, the law permits you to disregard completely the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is quite likely to testify falsely about everything. You are not required, however, to consider such a witness as totally unworthy of belief. You may accept so much of his or her testimony as you deem true and disregard what you feel is false. By the processes which I have just described, you, as the sole judges of the facts, determine which of the witnesses you believe, what portion of their testimony you accept and what weight you will give it.

**Defendants' Request To Charge No. 4**
**Prior Inconsistent Statements**

20. A witness may be discredited or "impeached" by contradictory evidence, that is, by a showing that he or she testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony.

21. It is for you to determine whether a prior statement was inconsistent and whether any such inconsistency is significant or inconsequential. Furthermore, if you believe that any witness has been so impeached, then it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you may think it deserves.

[Authority: MFJI, Instruction 76-5.]

**Defendants' Request To Charge No. 5**
**Interested Witnesses**

22. The plaintiffs, Roland Gutierrez, Frankie Rosado, Rene Canela and David Flores, as well as individual defendants Stephen Kennedy, Kevin Moroney and Raymond Rooney testified before you at trial. As a party to this lawsuit, each of them is an interested witness. Other witnesses may also have a lesser degree of interest in the outcome of the case.

23. You may consider a witness' degree of interest or lack of interest in the outcome of the case in evaluating his or her testimony. Now, a witness who is interested is not necessarily unworthy of belief. The interest of a witness, however, is a factor or possible motive you may consider in determining the weight and credibility to be given to his or her testimony. In short, it is for you to determine from your observations, and using your common sense and experience and all the other factors previously mentioned in these instructions about determining the truthfulness of witnesses, whether or not the possible interest of any witness is such that he or she is likely, intentionally or unintentionally, to distort his or her testimony. [Authority: MFJI, Instruction 76-3.]

**Defendants' Request To Charge No. 6**
**Expert Witnesses**

24. You have also heard testimony from plaintiff's expert, Dr. Steven Shapiro. An expert is allowed to express his opinion on those matters about which he has special knowledge and training. Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

25. In weighing an expert's testimony, you may consider the expert's qualifications, his opinions, his reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony. You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept the witness' testimony merely because he is an expert. Nor should you substitute it for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

26. You may give the testimony of the expert such weight, if any, that you think it deserves in the light of all the evidence. You may reject the testimony of the expert in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the expert witness. But most importantly, as I have already stated, you should not permit an expert's testimony to be a substitute for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you. (Authority: MFJI, Instructions 76-9 and 76-10.)

**Defendants' Request To Charge No. 7**
**Inferences**

27. During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

28. An inference is the deduction or conclusion that reason and common sense prompt a reasonable mind to draw from facts that have been proven by the evidence. Not all logically possible conclusions are legitimate or fair inferences. An inference is not a suspicion or a guess. It is a reasoned logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist. Only those inferences to which the mind is reasonably led or

directed are fair inferences from direct or circumstantial evidence in the case.   Whether or not

to draw a particular inference is of course a matter exclusively for you, as are all determinations

of fact.

29. There are times when different inferences may be drawn from facts, whether

proved by direct or circumstantial evidence.  The plaintiff asks you to draw one.  The defendants

ask you to draw another.  It is for you, and you alone, to decide what inferences you will draw.

So, while you are considering the evidence presented to you, you are permitted to draw, from the

facts that which you find to be proven, such reasonable inferences as would be justified in light

of your experience.

30.   The process of drawing an inference from facts in evidence is not a matter of

guesswork or speculation.  An inference is a deduction or conclusion which you, the jury, are

permitted to draw – but not required to draw – from the facts which have been established by

either direct or circumstantial evidence.   In drawing an inference you should exercise your

common sense.  So, while you are considering the evidence presented to you, you are permitted

to draw, from the facts which you find to be proven, such reasonable inferences as would be

justified in light of your experience.  [Authority: MFJI, Instruction 75-1 (2002).]

**Defendants' Request To Charge No. 8**
**<u>Deposition Testimony</u>**

31.   Some of the testimony before you is in the form of depositions which have

been received in evidence.  A deposition is simply a procedure where the attorneys for one side

may question a witness or an adverse party under oath before a court stenographer prior to trial.

This is part of the pretrial discovery, and each side is entitled to take depositions.  You may

consider the testimony of a witness given at a deposition according to the same standards you

would use to evaluate the testimony of a witness given at trial.  [Authority: MFJI, Instruction 74-14.]

**Defendants' Request To Charge No. 9**
**Burden of Proof**

32.  Bear in mind that the mere fact that the plaintiffs have filed a lawsuit and proceeded to trial does not necessarily mean that their allegations have merit.  In a civil case, such as this one, a plaintiff has the burden of establishing all the elements of her case by a preponderance of the credible evidence.  Now, I know some of you may have served in criminal cases as jurors or you may have watched movies, stage plays and television shows dealing with such cases.  You have heard the expression "proof beyond a reasonable doubt."  Members of the jury, that standard does not apply in a civil case.  That is the standard that is required before anyone can be found guilty of a crime and deprived of his/her liberty.  That is a different standard from what is employed in a civil case.  Put out of your mind any discussion you have heard about proof beyond a reasonable doubt.  A party's proof on each issue of its case must appear to your satisfaction to be by a preponderance of the credible evidence.

33.  The credible evidence means the testimony or exhibits that you find worthy to be believed.  A preponderance means a greater part of it.  That doesn't mean the greater number of witnesses or how much time either side employs in the trial.  Rather, the phrase refers to the quality of the evidence, its weight or significance, and the effect it has on your minds.

34.  The law requires that in order for a party to prevail on an issue as to which the party has the burden of proof, the evidence that supports the party's claim on that issue must appeal to you as more nearly representing what took place than the evidence opposed to that contention.  If it does not, or if the evidence weighs so evenly that you are unable to say, you

must resolve the question against the party that has the burden of proof, in this case, against the plaintiff and in favor of the defendants.

35.   We often say that evidence is to be weighed on scales, and if you find that the evidence on any issue is balanced evenly, equally in favor of the plaintiff and the defendant, that is to say, if the scales are evenly balanced, then the plaintiff, who has the burden of proof in this case, would not have sustained his burden and the case must be decided in favor of the defendants.  Similarly, if the scales tilt in favor of the defendant, then the case must be decided in favor of the defendant.  However, if the scales tilt in favor of the plaintiff,  that would constitute a preponderance of the credible evidence and the legal burden of proof would be satisfied.  In that instance, the case must be decided in favor of the plaintiff.

36.   The plaintiff in this lawsuit bears the burden of proving every essential element of his claims as to the defendant by a preponderance of the evidence.  If you find that any one of the required elements of the plaintiff's claims has not been proven by a preponderance of the evidence as to the defendant, you must return a verdict for the defendant and against the plaintiff.

[Authority: MFJI, Instruction 73-2; Adapted from Jury Charge of the Honorable Harold Baer, Jr. in *Hayes v. McGhee*, No. 94 Civ. 6766 (HB) (S.D.N.Y. Apr. 30, 1997).]

37.   I am now going to instruct you on the substantive law to be applied to the plaintiffs' claim in this lawsuit.

**Defendants' Request To Charge No. 10-A**
**Nature of Plaintiff's Claims**

38.   Plaintiffs assert three basic claims:

**First, discriminatory denial of investigative overtime**: plaintiffs Rosado, Canela and

Flores claim that they were discriminated against based upon their race and or national origin –

Hispanic – when they were routinely denied investigative overtime which was approved for

Caucasian detectives in the 52nd Precinct Detective Squad from February 2006 until October

2007, when defendant Moroney was assigned to that unit as a "Squad Commander." *See*

*Gutierrez v New York City*, 756 F. Supp 2d 491, 507 (SDNY 2010)("Plaintiffs Rosado, Canela,

and Flores adequately plead a Title VII claim for denial of investigative overtime.").   Plaintiff

Gutierrez, however, does not present a claim for the discriminatory denial of investigative

overtime. *See id.* at 507 fn 9 ("Plaintiff Gutierrez does not claim a failure to provide opportunity

for investigative overtime").

**Second, hostile work environment based on race or national origin**: all plaintiffs

claim that they were subject to a hostile work environment based upon their race and or national

origin – Hispanic – while employed as detectives at the 52nd Precinct Detectives Squad,

beginning sometime in early 2006 until late 2007, when defendant Moroney was assigned to that

unit as a "Squad Commander." *See id.* at 512-13.

**Finally, retaliation**: all plaintiffs claim that they were retaliated against because they

asserted a complaint of race and/or national origin discrimination while assigned to the 52nd

Precinct Detectives Squad.   Plaintiffs Rosado, Canela and Flores assert that they were retaliated

against when certain arrests were "re-assigned" because they had submitted this complaint of

discrimination and thus they were denied certain overtime. *See id.* at 511 ("While Plaintiffs

present very little evidence demonstrating which cases were reassigned and when, viewing the

evidence in their favor, a genuine issue of material fact exists as to whether retaliation played a role in the reassignments …"). Plaintiff Gutierrez asserts that he was retaliated against when he given excessive discipline concerning an incident when he used a patrol car to transport an unauthorized civilian, and this discipline was excessive because he had submitted this complaint of discrimination. *See id.* at 509-10 ("In any case, there is a material issue of fact as to whether any Defendant played a role in the modification and transfer and if they did so in retaliation for Gutierrez's protected complaint.").

39.  Plaintiffs' claims are all asserted against the City of New York as the employer pursuant to Title VII.  In addition, plaintiffs assert these same claims, under different statutes, against four *individual* defendants: Raymond Kelly, Stephen Kennedy, Kevin Moroney and Raymond Rooney.  For the claims against the individual defendants some additional instructions are required, and I will provide them after I've discussed the necessary elements of each claim for Title VII purposes against the City of New York.

**The Applicable Law : Title VII, Section 1983,**
**State Executive Law, and New York City Admin. Code Claims** [2]

40. Plaintiff's claims have been brought under several statutes, The New York City Administrative Code, the United States and New York State Constitutions and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII"), however the claims are all analyzed under the same standards as Title VII.  Title VII makes it unlawful for

---

[2]   Claims brought under the Equal Protection Clause of the 14th Amendment to the United States Constitution, via 42 U.S.C. § 1983 and under 42 U.S.C. § 1981; under the New York City Administrative Code's unlawful discriminatory practices section, under the New York State Executive Law and under Title VII are examined via the same analytical rubric. *See Annis v. County of Westchester*, 136 F. 3d 239, 245 (2d Cir. 1998); *Hargett v. National Westminister Bank, USA*, 78 F. 3d 836, 838 (2d Cir.), *cert. denied*, 519 U.S. 824, 117 S. Ct. 84 (1996); *Choudry v. Polytechnic Inst. of N.Y.*, 735 F.2d 38, 44 (2d Cir. 1984).

an employer to discriminate or retaliate against an employee for complaining about discrimination based upon race, color, gender, religion or national origin

41.   Title VII of the Civil Rights Act specifically addresses discrimination in employment.  The statute states, in relevant part, that it shall be an unlawful employment practice for an employer

> to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race ... [or] sex ....

It also provides that

> An unlawful employment practice is established when the complaining party demonstrates that race ... [or] sex ... was a motivating factor for any employment practice, even though other factors also motivated the practice.

42.  Section 8-107 of the New York City Administrative Code provides:  "It shall be an unlawful discriminatory practice for an employer . . . because of the . . . race . . . [or] sex . . . of any individual . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

43.   The standards that govern these statutory provisions are the same. [Authority: *Howard v. Senkowsku*, 986 F.2d 24, 27, n.2 (2d Cir. 1993); *Tyler v. Bethlehem Steel*, 958 F.2d 1176, 1180 (2d Cir. 1992).]  Therefore, when I provide you with the legal standard that you are to apply, I will provide you with one standard which is applicable to all claims.  Thus, a finding of liability under one of these provisions requires a finding of liability under the other two provisions.  Similarly, a finding of no liability under one provisions require a finding of no liability under the other two provisions.

- 16 -

**Defendants' Request To Charge No. 10-B**
**Plaintiffs' Claims of Race/ National Origin Discrimination**

44.   As I've explained, plaintiffs Rosado, Canela and Flores claim that they were discriminated against based upon their race and/or national origin when they were denied certain investigative overtime which was approved for Caucasian detectives in the 52nd Precinct Detective Squad between February 2006 and October 2007. See *Gutierrez v New York City*, 756 F. Supp 2d 491, 507 (SDNY 2010)("Plaintiffs Rosado, Canela, and Flores adequately plead a Title VII claim for denial of investigative overtime.").

45.   To create a presumption of discrimination based on race or national origin, each plaintiff must establish, by a preponderance of the evidence, the following four (4) elements. **First**, each plaintiff must establish that he is a member of a protected class. **Second**, each plaintiff must establish that his job performance was satisfactory. **Third**, each plaintiff must establish that he was subjected to some adverse employment action. **Finally**, each plaintiff must establish that the circumstances surrounding those adverse employment actions give rise to an inference of discrimination based on race and/or national origin. If each plaintiff does not establish all four (4) of these elements by a preponderance of the evidence, you must return a verdict for the defendants and against that plaintiff or plaintiffs.

46.   In this case, it is not disputed that plaintiffs are members of a protected class, as each are self-identified as Hispanic. However, you must consider the remaining three elements of this claim for discriminatory denial of investigative overtime, and if you find that each plaintiff has failed to prove any one of these elements of their claim, you must return a verdict in favor of the defendants and against that plaintiff or plaintiffs.

47. As concerns the second element of this claim, each plaintiff must establish that his job performance was satisfactory. This issue is in dispute and uniquely concerns the

conduct of each plaintiff. Therefore you must consider the job performance of each plaintiff separately and determine whether each plaintiff has established that his performance was objectively satisfactory. If one plaintiff's performance was satisfactory but another plaintiff's performance was not satisfactory, then the plaintiff with the satisfactory performance has satisfied this element and you can consider the remaining elements for his claim, but the plaintiff who did not perform satisfactorily has not established this element and you must find against this plaintiff.

48. As concerns the third element of this claim, that the plaintiffs have been subjected to an adverse employment action, you will need to consider whether the denial of investigative overtime would constitute an adverse employment action. In considering this element of plaintiffs' discrimination claim I further instruct you that an adverse employment action is an action which materially changes the terms or conditions of employment. To prove that he was subjected to an adverse employment action, plaintiff must show more than a mere inconvenience or alteration of his job responsibilities. *Galabya v. New York City Board of Education*, 202 F.3d 636, 640 (2d Cir. 2000); *see also Richardson v. New York State Department of Correctional Services*, 180 F.3d 426, 446 (2d Cir. 1999). Some examples of an adverse employment action are being fired, being demoted with a decrease in salary, being demoted to a less distinguished title, and being given significantly reduced job responsibilities. *Monica v. New York City OTB*, 1995 U.S. Dist. LEXIS 3350, *aff'd.*, 100 F.3d 941 (2d Cir. 1996), *citing Crady v. Liberty National Bank and Trust of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993); *see also Castro v. New York City Board of Education*, 1998 U.S. Dist. LEXIS 2863 (S.D.N.Y. 1998) ("a materially adverse change is typically indicated by dismissal, diminution of wages, or diminished opportunities for professional growth."); *Garber v. New York City Police Department*, 1997 U.S.

Dist. LEXIS 12590 (S.D.N.Y. 1997), aff'd., 1998 U.S. App. LEXIS 20181 (unhappiness and dissatisfaction does not support a claim of adverse employment action).

49.   A person's subjective views do not establish the existence of an adverse employment action.  The mere fact that an employee has been transferred or that his or her job responsibilities have changed is not sufficient in itself to show and adverse change in working conditions.  *Cooper v. N.Y.S. Dept. of Human Rights*, 986 F. Supp. 825, 828 (S.D.N.Y. 1997); *see also Ticali v. Roman Cathololic Diocese of Brooklyn*, 41 F.Supp.2d 249, 264 (E.D.N.Y. 1999) ("A preference for one position over another, however, is not sufficient to show an adverse change in working conditions.").  This is so because otherwise, every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.  *See Armfield v. Jacobson*, 1998 U.S. Dist. Lexis 1629, at 8 (E.D.N.Y. 1998).  "Changes in duties or working conditions that cause no materially significant disadvantages...are insufficient to establish the adverse conduct" required.  *Harelston v. McDonnel Douglas Corp.*, 37 F3d 379, 382 (8th Cir. 1994) (plaintiff was reassigned to a job that "required fewer secretarial duties and was more stressful in that she had to watch the door, listen for the fax, and be in charge of security for people coming in and out of the area.  This describes nothing more 'disruptive than mere inconvenience or an alteration of job responsibilities.'")  Nor is not getting the assignment one prefers an adverse employment action.  *See Bunis v. Runyon,* 1997 WL 639241 (S.D.N.Y.); *Garber v. New York City Police Dept.*, 1997 WL 525396.

50.   As concerns the fourth element of this claim, that the circumstances surrounding those adverse employment actions give rise to an inference of discrimination based on race and/or national origin, you should consider the totality of the evidence regarding the denial and approval of investigative overtime.  Defendants contend that there were legitimate,

non-retaliatory reasons for the alleged actions taken, as these actions were all based on plaintiffs' job performance. To establish this fact, defendants have presented evidence concerning plaintiffs' conduct and job performance. You may not second-guess whether the defendants made the right decision or otherwise substitute your judgment for that of the defendants. The plaintiffs cannot prevail merely by showing that they were treated in a way that she or others might think is unfair. An employer has the right to assign a particular job to an employee, to discipline an employee, or even to discharge an employee for any reason or no reason at all so long as intentional discrimination is not the reason. *See Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) ("[I]t is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal.").

51. Again, plaintiffs' own subjective belief that they were discriminated against is not enough to meet their burden of proving that the defendants' stated reason for their action is a mere pretext or disguise for discrimination. *See Taylor v. Polygram Records*, 94 Civ. 7689 (CSH), 1999 U.S. Dist. LEXIS 2583, at *46 (S.D.N.Y. Mar. 5, 1999) (holding that plaintiff's belief that she was discriminated against, "based on no evidence other than gut instinct," cannot support inference of discrimination), and cases cited therein. Remember, it is not your job to judge the wisdom or fairness of the defendants' employment decisions. Rather, you must determine whether the defendants were motivated to make certain adverse employment decisions regarding each plaintiff based upon that plaintiff's race. The defendants are entitled to make employment decisions for good reasons, bad reasons or no reason at all, so long as the decision was not motivated by unlawful discrimination.

**Defendants' Request To Charge No. 10-C**
**Plaintiffs' Claims of Race/National Origin**
<u>**Based Hostile Work Environment**</u>

52.   Plaintiffs next claim they were subjected to a hostile work environment based upon their race and/or national origin (Hispanic) while they were at the 52nd Precinct Detective Squad from February 2006 until October 2007.   <u>See</u> <u>Gutierrez v New York City</u>, 756 F. Supp 2d 491, 512-13 (SDNY 2010).   I will now explain to you what plaintiffs must prove, by a preponderance of the evidence, in order to prove their claims of a hostile work environment based upon their race and/or national origin.

53.   Plaintiffs must prove each of four elements to prevail on their hostile work environment claim:

(1)   that plaintiffs were a member of a protected class;

(2)   that plaintiffs were subjected to unwelcome harassment;

(3)   that the harassment was prompted simply because of plaintiffs' race and/or national origin;   and

(4)   that the charged harassment was so severe or pervasive that it affected a term, condition, or privilege of employment.

[Authority; <u>Trotta v. Mobil Oil Corp.</u>, 788 F.Supp. 1336, 1348 (S.D.N.Y. 1992); <u>Babcock v. Frank</u>, 783 F.Supp. 800, 808 (S.D.N.Y. 1992).]

54.   As I've explained concerning plaintiffs' first claim, it is not disputed that plaintiffs are members of a protected class.   Again, however, you must consider the remaining three elements of this claim, and if you find that each plaintiff has failed to prove any one of these elements of their hostile work environment claim, you must return a verdict in favor of the defendants and against that plaintiff or plaintiffs.

55. The second element for a hostile work environment claim requires that plaintiffs establish that they were subject to unwelcome harassment. In determining whether the conduct was unwelcome harassment, you should consider all the evidence, not just the plaintiffs' testimony. To be harassment the conduct must be hostile. In determining whether conduct is hostile, you should consider whether:

(1)   the conduct was verbal, physical, or both,

(2)   the conduct occurred one time or repeatedly,

(3)   the conduct was plainly offensive,

(4)   the alleged harasser was a co-worker or supervisor,

(5)   others joined in the harassment, and

(6)   the harassment was directed at more than one person.

[Authority: Employment Litigation: Model Jury Instructions, Section of Litigation, American Bar Association § 1.04[2][b] (1994 ed.), 29 C.F.R. § 1604.11. *Harris v. Forklift Systems, Inc.*, 62 U.S.L.W. 4004, 114 S.Ct. 367 (1993); *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65 (1986).]

56.   To satisfy the third element of their claim, the plaintiffs must establish that they were harassed simply because of their race and/or national origin - Hispanic. This element is different from the second element, and therefore in order to find this element satisfied you must find that if in fact harassment occurred it was **because** of plaintiffs' race or national origin. [Authority: *Trotta v. Mobil Oil Corp.*, 788 F.Supp. 1336, 1348 (S.D.N.Y. 1992); *Babcock v. Frank*, 783 F.Supp. 800, 808 (S.D.N.Y. 1992).]

57.   To establish the fourth element of their claim, the plaintiffs must establish that the alleged harassment was so severe or pervasive that it affected a term or condition of their employment at the 52nd Precinct Detective's Squad of the NYPD.   In this regard, "the incidents

must be repeated and continuous; isolated acts or occasional episodes" are not enough to establish a violation.  [Authority: *Kotchis v. Rosa and Sullivan Appliance Center, Inc.*, 957 F.2d 59, 62-63 (2d Cir. 1992).  *See also Lopez v. S.B. Thomas Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987) (several incidents over short period of about five months insufficient); *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir. 1986) (plaintiff cannot rely solely on casual comments or trivial events and sporadic conversation); *Babcock*, 783 F.Supp. at 808 (harassment must consist of more than just isolated incidents or casual comments; incidents must be more than few in number over a short period of time).]

58.  Whether the harassment affects a term or condition of employment is determined from the totality of the circumstances.  [Authority: *Snell*, 782 F.2d at 1103; *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 69 (1986).]  Thus, based upon the totality of the circumstances, the plaintiffs must prove, by a preponderance of the evidence, that the work place was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the plaintiffs' employment and create an abusive working environment.  Among the totality of circumstances that you may consider are the following factors:

(1)   the total physical environment of the plaintiffs' work area;

(2)   the degree and type of obscenity that filled the environment of the work place, both before and after the plaintiffs arrived;

(3)   the reasonable expectations of the plaintiffs upon entering the environment;

(4)   the nature of the unwelcome acts or words;

(5)   the frequency of the offensive encounters;

(6)    the severity of the conduct;

(7)    the context in which the harassment occurred;

(8)    whether the conduct was unwelcome;

(9)    the effect on the plaintiffs' psychological well-being;

(10)   whether the conduct was physically threatening;

(11)   whether it was merely an offensive utterance; and

(12)   whether it unreasonably interfered with the plaintiffs' work
       performance.

[Authority: *Employment Litigation: Model Jury Instructions*, Section of Litigation, American Bar Association § 1.04[2][b] (1994 ed.), *citing* 29 C.F.R. § 1604.11. *Harris v. Forklift Systems, Inc.,* 62 U.S.L.W. 4004, 114 S.Ct. 367 (1993); *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65 (1986).]

59.    Finally, in order to prevail on his claim, the plaintiffs must have perceived the conduct to be hostile or abusive, *and* the conduct must also have been severe and pervasive enough that a reasonable person would have also perceived the work environment to be hostile or abusive.  In other words, the environment in question is to be judged by both an *objective* and *subjective* standard.  It is not enough for you to find that the plaintiffs themselves believed that they were being subjected to a hostile work environment.  You must also find that a reasonable person of the same race as plaintiff would have also found the working conditions to constitute a hostile work environment.  In other words, it is not enough that you find that plaintiffs felt subjectively intimidated, you must also find that any reasonable person in plaintiffs' position would have felt that the work place was an environment permeated by discriminatory insult and ridicule.  [Authority: *Harris*, 114 S.Ct at 370: 'Conduct that is not severe or pervasive enough to

create objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond the purview of Title VII. _Accord Trotta_, 788 F.Supp. 1350; _Danna v. New York Telephone Co._, 752 F.Supp. 594, 609-10 (S.D.N.Y. 1990); _Bennett v. New York City Dept. of Corrections_, 705 F.Supp. 979, 984 (S.D.N.Y. 1989).]


**Defendants' Request To Charge No. 10-D**
**Plaintiffs' Claims of Retaliation**

      60.  As I mentioned above, plaintiffs' third claim is that they were subjected to retaliation for engaging protected activity when they submitted internal complaints of discrimination – that is that they claim they were being punished for engaging in certain "protected activity."   Because the instances of the asserted protected  are unique to each plaintiff, each circumstance will need to considered separately.  You will need to consider when each plaintiff engaged in protected activity and what, if anything, occurred as a result of that activity.

      **Plaintiff Roland Gutierrez** asserts he engaged in protected activity when he complained to Chief Kennedy on **February 28, 2007**, and at that time defendant Chief Kennedy contacted the NYPD office of equal employment on behalf of plaintiff  Gutierrez. _See Gutierrez v NYC_, 756 F. Supp. 2d 491, 498 (SDNY 2010).

      **Plaintiff Frank Rosado** asserts he engaged in protected activity when he filed an internal complaint with the NYPD's office of equal employment on **August 1, 2007**. _Id._

      Finally, **plaintiffs Rene Canela and David Flores** assert that they engaged in protected activity when they filed internal complaints with the NYPD's office of equal employment on **August 8, 2007**. _Id_

61.   In order to present any claim of retaliation, each plaintiff must prove, by a preponderance of the evidence, the following four (4) elements:

(1) he was engaged in a protected activity, such as making, in good faith, a complaint in opposition to discrimination;

(2) he "suffered an adverse employment action that would have dissuaded a reasonable worker from making or supporting a charge of discrimination". [Authority: *Burlington Northern & Santa Fe Railway v. White*, 126 S. Ct. 2405, 2415 (2006)] ;

(3) the individual who took an adverse action against plaintiff was aware of her protected activity; and,

(4) there was a causal connection between the protected activity (complaining of race and/ or national origin discrimination at the 52nd Precinct Detective's Squad from February 2006 until October 2007) and the adverse employment action.  [Authority: *Burlington Northern & Santa Fe Railway v. White*, 126 S. Ct. 2405, 2415 (2006)[3]; *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1338 (2d Cir.1995); *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir 1991); *DiCintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir.), cert. denied, 484 U.S. 965, 108 S. Ct. 455 (1987); *Pace v. Ogden Services Corp.*, 257 A.D.2d 101 (3d Dep't 1999)].

---

[3]   The Supreme Court in *Burlington Northern & Santa Fe Railway v. White*, 126 S. Ct. 2405, 2415 (2006), specifically listed these elements of a retaliation claim: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) she suffered an adverse employment action that would have dissuaded a reasonable worker from making or supporting a charge of discrimination; and (4) a causal connection between the protected activity and the adverse employment action." *Burlington Northern & Santa Fe Railway v. White*, 126 S. Ct. 2405, 2415 (2006).

62. If a plaintiff does not establish all four (4) of these elements by a preponderance of the evidence, you must return a verdict for the defendants and against that plaintiff or plaintiffs. Now, let's look at each of these four elements in more detail.

63. Looking at the first element, engaging in a protected activity, it is undisputed that the filing of an internal complaint of discrimination with the NYPD's office of equal employment, if made in good faith, is a form of protected activity. Thus, the plaintiffs must establish, by a preponderance of the evidence, that their internal complaints of discrimination that were made to the NYPD office of equal employment, which I've just mentioned, were actually made in good faith. That is to say that you must first determine if each plaintiff truly believed that he was subjected to a discriminatory conditions at the 52nd Precinct Detective's Squad based on his race or national origin and whether a reasonable person would have believed that there was some validity to this underlying complaint. Thus, if the plaintiffs did not believe that they were victims of discrimination based on their race or national origin at the 52nd Precinct Detectives Squad or no reasonable person would have believed that plaintiffs were victims of such discrimination, then there would be no basis to establish a claim of retaliation and you must return a verdict for the defendants. [Authority: *Clark County School District v. Breeden*, ___ U.S. ___, 121 SCt. 1508, 1511 (April 23, 2001); *Dodd v Middletown Lodge (Elks Club) No. 1097*, 264 A.D.2d 706 (2d Dep't 1999), aff'd, 277 A.D.2d 276 (2000)].

64. Turning to the second element, an adverse employment action, plaintiffs must prove that there was "an adverse employment action that would have dissuaded a reasonable worker from making or supporting a charge of discrimination". [Authority: *Burlington Northern & Santa Fe Railway v. White*, 126 S. St. 2405, 2415 (2006)]. In this context, such an employment action must be "harmful to the point that they could well dissuade

a reasonable worker from making or supporting a charge of discrimination."   [Authority: _Burlington Northern & Santa Fe Railway v. White_, 126 S. St. 2405, 2409 (2006)].

65.   Again, a person's subjective views do not establish the existence of an adverse employment action.   The question instead is whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." [Authority:   _Burlington Northern & Santa Fe Railway v. White_, 126 S. St. 2405, 2414 (2006)(citations and internal quotes omitted); _see also_   _Cooper v. New York State Dept. of Human Rights_, 986 F.Supp. 825, 828 (S.D.N.Y. 1997); _Henriquez v. Times Herald Record_, No. 97 Civ. 6176 1997 U.S. Dist. LEXIS 18760 at *6 (S.D.N.Y. Nov. 25, 1997); _Martinez v. Triangle Maintenance Corporation_, 293 A.D.2d 721 (2d Dep't 2002)(change in duties and restriction from a certain work area do no constitute adverse employment actions).]   This is so because otherwise, every trivial personnel action that an employee disliked would form the basis of a retaliation claim. [Authority: _Burlington Northern & Santa Fe Railway v. White_, 126 S. St. 2405, 2414 (2006)("We speak of _material_ adversity because we believe it is important to separate significant from trivial harms." – emphasis in original); _Armfield v. Jacobson_, 1998 U.S. Dist. LEXIS 1629 at *8 (E.D.N.Y. 1998)("Changes in duties or working conditions that cause no materially significant disadvantages … are insufficient to establish the adverse conduct.")].

66.   In considering this element – the existence of an adverse employment action – it is important to consider the different adverse actions asserted by the individual plaintiffs in this case. **Plaintiffs Rosado, Canela** and **Flores** assert that they were retaliated against when they had certain arrests reassigned to other detectives thereby being denied certain arrest

overtime. *See Gutierrez v New York City*, 756 F. Supp 2d 491, 511 (SDNY 2010).  Thus, you will need to consider whether these plaintiffs have established that any such reassigned arrests occurred *after* the plaintiffs had engaged in protected activity, and whether these reassigned arrests would actually have dissuaded a reasonable worker from making or supporting a charge of discrimination.  **Plaintiff Gutierrez**, however, does not make this claim of retaliation.  Instead, Gutierrez' sole claim for retaliation is what he asserts as unfair punishment for his April 7, 2007 violation of NYPD policy by using an NYPD vehicle without authorization.  Gutierrez asserts that the punishment he received – in being transferred from the 52nd Precinct Detective's Squad to Bronx Central Booking and being placed on modified assignment – was excessive and retaliatory.  Thus, for plaintiff Gutierrez, you need consider whether the punishment was actually excessive, and if so, whether it would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

67.   Turning to the third element, notice, generally it should be presumed that the NYPD (and thus the City of New York) was aware of the internal complaint once that complaint was filed with the internal EEO office.  This presumption, however, does **not** require the conclusion that the specific individual  who purportedly took an adverse action against a plaintiff was aware of his alleged protected activity **or** that any specific individual defendant was aware of the protected activity.  You may presume such notice *against the NYPD* (as opposed to any individual defendant) if you find that either: 1) whoever performed the complained of action was acting upon the orders of a superior who had the requisite knowledge; or 2) the circumstances evidence that this individual actually had such knowledge. [Authority: *Gordon v. New York City Board of Education*, 232 F.3d 111, 117-18 (2d Cir. 2000)]

68.  In considering *any* **individual defendant's** liability, however, you *must* actually find that such individual defendant was aware of the particular plaintiff's protected activity and actually participated in the complained of retaliatory action.  Again, I will explain more about the rules for considering each claim against the individual defendants shortly, but I wanted to note this need for an individual's notice to contrast it to the requirement of establishing notice against the NYPD.

69.  In determining this question of a particular individual's motivation (whether it be an individual defendant or another employee of the NYPD), you should consider all the evidence in the case, including the timing of the alleged retaliatory acts, the testimony of the witnesses, and the documents in evidence.  I caution you that your function is to determine only whether a motive to retaliate played a substantial role in the alleged retaliatory acts.  You are *not* to second-guess the wisdom or reasonableness of the defendant's employment practices or decisions.  The defendants have the right to make personnel decisions for any reason, or no reason at all, so long as retaliation for the filing of the discrimination charge was not a motivating factor in the decision.

70.  The final element which each plaintiff must establish for his claim of retaliation is that a causal connection exists between the protected activity, here complaining of race or national origin discrimination at the 52nd Precinct Detective's Squad, and the adverse employment action allegedly suffered by each of the plaintiffs.  In this context a "causal connection" means that the defendant intentionally took an adverse employment action against the plaintiff *because* the plaintiff engaged in a protected activity.  When I say "because," I mean that plaintiff must establish by a preponderance of the evidence that the proffered reason for the particular act that she claims was retaliatory was not the true reason for the decision and that

unlawful retaliation was the true reason. [Authority: _Johnson v. Palma_, 931 F.2d 203, 207 (2d Cir. 1991)].

71.   In this regard, you may consider whether the causal connection is established by a showing of "temporal proximity." That is, you should consider the time between when plaintiff engaged in a protected activity and when the alleged adverse employment action occurred. The further the time between these two events the less likely that the alleged adverse employment decision was motivated by an intent to retaliate. Put another way, the greater the time between plaintiff submitting a complaint of a race-based discrimination at the 52nd Precinct Detective's Squad and the various employment decisions complained of, the less likely there is a causal connection indicating an intent to retaliate. [Authority: See _Hollander v. Am. Cyanamid Co._, 895 F.2d 80 (2d Cir. 1990)(3 months insufficient to establish causal connection for a prima facie case of retaliation)].

72.   On this issue I remind you that: you are not judge a defendant's wisdom. A defendant employer is entitled to make an employment decision for a good reason, a bad reason, or no reason at all, so long the action is not prompted in retaliation for a plaintiff's good faith complaint of discrimination. A plaintiff cannot prevail merely by showing that he was treated in a way that some may think unfair. A plaintiff's own subjective belief that he was retaliated against is insufficient to establish burden of proving that defendant's articulated reasons for its actions are a prextext for retaliation. Plaintiff's subjective belief, feelings, suspicions, or speculation cannot establish prextext. [Authority: Adapted from the Jury Charge of the Honorable Denise Cote in _Chu v. City of New York_ 99 Civ. 11523 (DLC) October 12, 2000. See _e.g._, _Byrnie v. Town of Cromwell, Bd of Educ._, 243 F.3d 93, 102 (2d Cir. 2001); _Tarshis v. Reise Org._, 211 F.3d 30, 37 (2d Cir. 2000).]

73. Ultimately, the critical issue for you to determine is "whether plaintiff has proven by a preponderance of the evidence that the defendant intentionally discriminated or retaliated against the plaintiff for engaging in protected activity." There are two distinct ways for a plaintiff to prove such a claim: "either by proving that a discriminatory motive, more likely than not, motivated the defendants or by proving both that the reasons given by the defendants are not true and that discrimination is the real reason for the actions." [Authority: *Gordon v. New York City Board of Education*, 232 F.3d 111, 117-18 (2d Cir. 2000)); *see also Birk v. New York City Transit Auth.*, 304 A.D.2d 319 (2d Dep't 2003)("The complaint, alleging that plaintiff was subjected to impermissible workplace discrimination by reason of a medical disability, was properly dismissed since defendant employer set forth a legitimate, nondiscriminatory reason for the alleged adverse employment action and plaintiff did not, in response, meet his burden to raise a triable issue as to whether defendant's proffered reason was a mere pretext.")].

**Defendants' Request To Charge No. 10-E**
**Liability Against Individual Defendants for Federal § 1983 Claims**

74. The claims against these individual defendants are made pursuant to 42 U.S.C. § 1983, the federal civil rights law which provides a remedy for individuals who have been deprived of their constitutional rights under color of state law, as well as other State and local statutes. Section 1983 provides, in relevant part, that

> Every person who under color of any statute, ordinance, custom or usage of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

75. To prevail on this claim, the plaintiffs must establish, by a preponderance of the evidence, each of following three (3) elements:

> First, that the conduct complained of by the plaintiffs was committed by a person acting under color of state law;

> Second, that this conduct deprived the plaintiffs of rights, privileges or immunities secured by the Constitution or laws of the United States; and

> Third, that defendants' acts were the proximate cause of the injuries and consequent damages sustained by the plaintiffs

76. Because these elements are unique to *each* individual defendant, you must consider the conduct of each defendant separately – *and* consider how that specific conduct impacted upon a specific plaintiff.  I shall now explain each of these three (3) elements in greater detail

[Authority: MFJI, Instructions 87-65 and 87-69; 42 U.S.C. § 1983.]

### **First Element — "Under Color of Law"**

77. The first element that the plaintiffs must prove, by a preponderance of the evidence, is that the individual defendants acted under color of state law.  The term action under color of state law simply means action that is made possible only because the actor is clothed with the authority of the state.

78. In this case it is not disputed that, at the time of the events that have been at issue in this trial, each of the individual defendants was acting under color of state law.  However, you must still determine whether each of the plaintiffs have established by a preponderance of the evidence: (1) that each individual defendant actually deprived a particular plaintiff of a constitutional right; and (2) that the alleged deprivation was the "proximately

- 33 -

cause" the injuries that this particular plaintiff claims to have sustained.  I shall now discuss each

of these remaining two (2) elements.

[Authority: MFJI, Instruction 87-69; 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42

(1988).]

### Second Element — Deprivation of a Constitutional Right

79.   The second element that each plaintiff must prove by a preponderance of the

evidence is that the individual defendants deprived them of a constitutional right.  For you to

determine whether the plaintiffs have met this burden and established this second element, you

are to apply a three-part test to the evidence presented by the plaintiffs at this trial.  To show that

the defendants actually deprived her of a constitutional right, the plaintiffs must establish by a

preponderance of the evidence

> First, that each individual defendant actually
> committed specific the acts;
>
> Second, that those acts caused the plaintiffs to
> suffer the loss of a constitutional right;
>
> Third, that in performing those acts, the defendants
> acted with deliberate indifference to the rights of the
> plaintiffs.

[Authority: MFJI, Instruction 87-74; 42 U.S.C. § 1983; *Daniels v. Williams*, 474 U.S. 327

(1986).]

### State of Mind — Intent

80. To establish a claim pursuant to Section 1983, the plaintiffs must

demonstrate by a preponderance of the evidence that each of the defendants acted intentionally.

An act is intentional if it is done knowingly, that is, if it is done voluntarily and deliberately.  An

act is not intentional if it done because of mistake, accident, negligence or other innocent reason.

If you find that the acts of the defendants were merely negligent then, even if you find that the plaintiffs were injured as a result of those acts, you must return a verdict for the defendants.

81.   In determining whether defendants Kelly, Rooney, Moroney and Kennedy acted with the requisite intent, you should remember that while witnesses may see and hear and so be able to give direct evidence of what a person does or fails to do, there is no way of looking into a person's mind.   Therefore, you have to depend on what was actually done, what the people involved said was in their minds and your own belief or disbelief with respect to those facts.

[Authority: MFJI, Instructions 87-75 and 87-76; 42 U.S.C. § 1983; *West v. Atkins, 487 U.S. 42 (1988); Daniels v. Williams*, 474 U.S. 327 (1986).]

### Deprivation of a Constitutional Right — "Equal Protection of the Laws"

82.   Plaintiffs claim that each of the individual defendants violated their right to "equal protection of the law."   The Equal Protection Clause of the Fourteenth Amendment provides that:

> "[n]o State shall . . . deny to any person within its
> jurisdiction the equal protection of the laws."

83.   The Equal Protection Clause essentially requires that all similarly situated persons be treated alike.   To establish a claim of race-based discrimination under the Equal Protection Clause, the plaintiffs must prove, by a preponderance of the evidence, that each defendant intentionally discriminated against a plaintiff or plaintiffs on the basis of their race.

[Authority: U.S. Const. amend. XIV, § 1; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985); *Brown v. City of Oneonta*, 195 F.3d 111 (2d Cir. 1999); *Hayden v. County of Nassau*, 180 F.3d 42 (1999).]

### Third Element — Proximate Cause

84.   The third element which the plaintiffs must prove by a preponderance of the evidence is that the actions of each individual defendant were the proximate cause of the injuries which the plaintiffs' claim to have sustained.   "Proximate cause" means that there must be a sufficient causal connection between the act or omission of the defendants and any injury or damage sustained by the plaintiffs.   An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing the alleged injury.   In other words, if a defendant's act or omission had such an effect in producing an injury that reasonable persons would regard it as being a cause of the injury, then the act or omission is a proximate cause.

85.   To recover damages for any injury, the plaintiffs must establish by a preponderance of the evidence that such injury would not have occurred without the conduct of the defendants.   If you find that the plaintiffs' injuries would have occurred even in the absence of conduct by the defendant, you must also find that the defendant did not proximately cause the plaintiffs' injuries and return a verdict in favor of the defendant.

[Authority: MFJI, Instruction 87-79; 42 U.S.C. § 1983; *Martinez v. California*, 444 U.S. 277 (1980); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).]


**Defendants' Request To Charge No. 11-A**
**Damages Generally**

86.   If you find that plaintiffs have carried their burden of proving, by a preponderance of the evidence, that the defendants discriminated or retaliated against them then you may consider the amount of damages which will fairly and reasonably compensate plaintiffs for those injuries they sustained as a result of that discrimination or retaliation.

87. The fact that I am giving you instructions on the subject of damages should not be construed by you as indicating that I believe you should find for plaintiff. That's entirely up to you. As a judge, I am required to instruct all juries on damages in all cases whether or not there is merit to a plaintiff's claims.

**Defendants' Request To Charge No. 11-B**
**Compensatory Damages**

88. Compensatory damages are designed to restore the plaintiff to the same position he or she was in prior to the injury – that is, to compensate him or her for the damage suffered as a direct result of the defendant's illegal conduct. Two types of compensatory damages are available in this case: 1) compensation for economic loss – any loss of salary or any other economic loss; and 2) compensation for mental anguish, pain and suffering, humiliation, indignity and embarrassment.

89. You may not presume that a plaintiff has been damaged. The burden is on a plaintiff to prove each item of his or her damages by a preponderance of the evidence. A plaintiff is not required to prove the amount of her damages with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. At the same time, the damages you award must be based on the evidence presented at trial, not on speculation or guesswork. The plaintiff has an obligation to show sufficient facts and circumstances to permit you to make a reasonable estimate of each item of damages. If a plaintiff fails to do that, that plaintiff cannot recover for that item of damages.

90. In determining the amount of damages, you must exercise good judgment and common sense. The purpose of a damage award is to make a plaintiff whole - that is, to compensate him for the injuries, if any, which resulted from the defendant's violation of the

plaintiff's rights.  The damages that you award should be fair and reasonable, neither inadequate nor excessive.

**Defendants' Request To Charge No. 11-C**
**Nominal Damages**

91.  If you return a verdict for one or more of the plaintiffs, but find that the plaintiff or plaintiffs have failed to prove by a preponderance of the evidence that he/they suffered any actual damages, then you must return an award of damages in some nominal or token amount not to exceed the sum of one dollar.

92.  Nominal damages must be awarded when the plaintiff has been deprived by a defendant of a right but has suffered no actual damage as a natural consequence of that deprivation.  The mere fact that a statutory deprivation occurred is an injury to the person entitled to enjoy that right, even when no actual damages flow from the deprivation.  Therefore, if you find that one or more of the plaintiffs has suffered no injury as a result of the defendants' conduct *other than the fact of a statutory violation*, you must award nominal damages not to exceed one dollar.

**Defendants' Request To Charge No. 12**
**Closing Instructions**

93.  I have now outlined for you the rules of law applicable to the claim in this case and the processes by which you should weigh the evidence and determine the facts.  In a few minutes you will retire to the jury for your deliberations.

**Defendants' Request To Charge No. 13**
**Foreperson**

94. When you retire to the jury room, you must select one of you to serve as foreperson of the jury. The foreperson will preside over the deliberations and speak for the jurors here in open court. Members of the jury, please remember that the foreperson's vote is not entitled to any greater weight than any other individual juror's. The foreperson will send out any notes and, when the jury has reached a verdict, he or she will notify the Marshal that the jury has reached a verdict.


**Defendants' Request To Charge No. 14**
**Questions From Jury**

95. If it becomes necessary during your deliberations to communicate with the Court, you may send a note signed by your foreperson or by one or more members of the jury. The courtroom deputy should be given the note and he/she will deliver it to me. No member of the jury should attempt to communicate with the Court by means other than a signed note, and the Court will not communicate with any member of the jury on any subject touching the merits of the case other than in writing or orally here in open Court.

96. You will note from the oath about to be taken by the deputy that he/she too as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

97. Bear in mind also that you are never to reveal to any person – not even to the Court – how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous decision.

**Defendants' Request To Charge No. 15**
**Reviewing My Legal Instructions**

98.   I will be sending my instructions back into the jury room. I am sending them back with you in case you want to review them during your deliberations.  If you find that you do not understand my instructions, or you want me to go over them again to clarify certain matters for you or just to reinforce what I had to say, send in a note asking for re-instruction and I will be happy to go over them.  Don't assume that because I am sending the instructions back with you, that you can't ask me to go over the instructions again. You can, and I will.

**Defendants' Request To Charge No. 16**
**Special Verdict Sheet**

99. For your convenience, a special verdict sheet has been prepared. You will take these forms to the jury room. No inference is to be drawn from the way the questions are worded as to what the answer should be.  The questions are not to be taken as any indication that I have any opinion as to how they should be answered.  I have no such opinion, and even if I did it would not be binding on you.

100.    Your function, to reach a fair conclusion from the law and the evidence, is an important one.  Your verdict must be unanimous.  When you are in the jury room, you may now discuss the case.  It is, in fact, the duty of each of you to consult with your fellow jurors and to deliberate with a view toward reaching agreement on a verdict, if you can do so without violating your individual judgment and your conscience.  In the course of your deliberations, no one should surrender conscientious beliefs of what the truth is and what the weight and effect of the evidence is.  Moreover, each of you must decide the case for yourself and not merely acquiesce in the conclusion of your fellow jurors.  Nevertheless, I do ask you to examine the

issues and the evidence before you with candor and frankness and a proper deference to and regard for the opinions of one another. Remember that the parties and the court are relying upon you to give full and conscientious deliberation and consideration to the issues and evidence before you. By so doing, you carry out to the fullest your oaths as jurors: well and truly to try the issues of this case and a true verdict render.

       101.    When you have completed the verdict form, then you will sign your names, the form will be marked as a Court Exhibit and the verdict sheet will then form the basis for the verdict that you deliver.

**Defendants' Request To Charge No. 17**
**Check With Attorneys For Objections**

       102.    Now at this point I am going to ask the jury to remain seated where you are for a brief minute more and I ask that you do not discuss the case amongst yourselves. I am going to speak briefly with the attorneys to see whether there is something I may have left out of my instructions, or if there may be something they wish to have me clarify or expand upon in some way. So please do not discuss the case and continue to keep an open mind, because I might have more to say to you after I have talked with the lawyers.

Dated:      New York, New York
            May 17, 2012

                            MICHAEL A. CARDOZO
                            Corporation Counsel of the
                            City of New York
                            Attorney for Defendants
                            100 Church Street
                            New York, New York  10007
                            Tel: (212) 788-0881

                            By: _____
                               James M. Lemonedes
                               Assistant Corporation Counsel